596 A.2d 260

**Dawn E. COSTELLO, Petitioner,**

v.

**STATE EMPLOYES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 5, 1991.

Decided June 10, 1991.

Publication Ordered Aug. 7, 1991.

20

James B. Martin, for petitioner.

Susan Ray Kempski, for respondent.

Before DOYLE and COLINS, JJ., and BARBIERI, Senior Judge.

COLINS, Judge.

Dawn E. Costello (petitioner) appeals from an order of the Pennsylvania State Employes' Retirement Board (Board), reversing a decision of the hearing examiner that granted petitioner's request, pursuant to the State Employees' Retirement Code (Code), 71 Pa.C.S. §§ 5101–5956, to purchase multiple service membership in the State Employees' Retirement System (SERS).[1]

Petitioner has a bachelor of science degree in nursing, a master of science in education, and a doctorate in educational administration, and currently is enrolled in a master of science program in nursing. She began working for the Commonwealth's Department of Public Welfare (DPW) on March 2, 1981, as Director of Nursing at the Coaldale State Hospital (Coaldale).

Petitioner had been employed by the Allentown City School District (School District) from September 1, 1963 through June 30, 1967, during which time she was a mem-

---

1. 71 Pa.C.S. § 5102, *as amended,* provides in pertinent part:

   'Multiple service.' Credited service of a member who has elected to combine his credited service in both the State Employees' Retirement System and the Public School Employees' Retirement System. 71 Pa.C.S. § 5907(c), *as amended,* provides:

   (c) Multiple service membership.—Any active member who was formerly an active member in the Public School Employees' Retirement System may elect to become a multiple service member. Such election shall occur no later than 30 days after becoming an active member in this system.

ber of the Public School Employes' Retirement System (PSERS). When she left the School District, petitioner withdrew her accumulated deductions from her PSERS account.

Before starting her employment at Coaldale, petitioner signed an application for membership in SERS, but left blank the required information on the application, which was later completed by George York (York), a retirement counselor at Coaldale. It is alleged that York told petitioner she could buy credit for her previous service at a later date but did not tell her she could buy previous *public school* service at a later date. Petitioner, by letter dated March 6, 1981, which was within 30 days of her enrollment in SERS, requested reinstatement of prior service in PSERS, multiple service membership, and acknowledged that the cost of purchasing this credit must be satisfied by lump sum payment.

On December 17, 1981, PSERS mailed petitioner a statement indicating the $1,317.50 amount due for purchasing her service credit, the billing date, and the required lump sum payment method. Accompanying the statement was a cover letter containing detailed directions for making the lump sum payment (either within 30 or 90 days of the billing date) and also a paragraph regarding the payroll deduction payment method, including the statement: "Any subsequent request to purchase this service will be calculated with additional interest."

It is relevant that during the winter of 1984, the *SERS Dispatch* (regularly distributed to all members) announced an "open enrollment" period to apply for multiple service membership. It is alleged that petitioner received the winter 1984 *SERS Dispatch,* along with both the 1981 and 1986 SERS Member Handbooks, and that the 1986 SERS Member Handbook clearly stated that payment to purchase service credit was due within 90 days of opting for multiple service membership. Petitioner neither remitted the lump sum payment within 90 days of the billing date, nor contacted either SERS or PSERS about the matter until October,

1986 (about 5 years after her request for multiple service membership). In response to petitioner's October, 1986 inquiry, SERS notified petitioner that she was ineligible for multiple service membership.

Petitioner appealed SERS' rejection and, after a hearing on June 28, 1989, the hearing examiner recommended to the Board a finding in petitioner's favor. SERS filed exceptions to the hearing examiner's opinion and, in an opinion and order dated August 8, 1990, the Board reversed the hearing examiner's decision and denied petitioner's request for multiple service membership. It is that decision from which petitioner now appeals.

Our scope of review of an administrative board's final adjudication is limited to a determination of whether the adjudication is supported by substantial evidence, is in accordance with law, or whether constitutional rights were violated. *Clark v. Department of Public Welfare*, 118 Pa.Commonwealth Ct. 587, 546 A.2d 1277 (1988). Here, petitioner seeks to have the Board grant her request to purchase credit for multiple service membership, even though, in contravention of PSERS regulations, she failed to pay for the service credit within 90 days of receiving certification of service from PSERS.

The sole issue before us for review is whether, in consideration of 71 Pa.C.S. § 5907(c), the principle of equitable estoppel precludes SERS from implementing a 90–day time limit, so as to bar petitioner from purchasing multiple service credit once she elected to do so.

Petitioner first argues that her March 6, 1981 letter to PSERS (with a copy to SERS) unequivocally put both PSERS and SERS on notice that she was electing to become a multiple service member of SERS. As to the application form that petitioner signed in blank but that York completed for her, petitioner contends that not until SERS rejected her election did she know the form was in any way deficient and that, therefore, she should not be held responsible for these defects.

Petitioner bases this argument on: (1) York's alleged misrepresentation that there was no required time limit within which petitioner had to repay her PSERS withdrawn deductions; (2) York's failure to differentiate for petitioner between previous *state* service and previous *school* service; and (3) the fact that petitioner allegedly was never provided with an SERS Handbook containing language clarifying the 90 day purchase period. Further, with respect to the information provided by SERS in its winter 1984 *SERS Dispatch* (opening a "window" to opt for multiple service membership), petitioner thought this inapplicable to her situation since she already had elected to become an SERS member. Finally, petitioner emphasizes that Section 5907(c) of the Code mandates only that *election* for multiple service membership be made within 30 days, but does not provide time limits for making repayments to purchase credit for previous state service. Therefore, according to petitioner, the 90 day time limit is imposed by regulations that the statute empowers, not requires, SERS to adopt.

SERS counters petitioner's arguments by noting that when petitioner began working for Coaldale, she did not have *any credited service* with PSERS to combine with her SERS credit. SERS contends, therefore, that the Board correctly reversed the decision of the hearing examiner, who, in finding that petitioner had elected multiple service membership simply by sending her March 6, 1981 letter, erred and mistakenly implied either that: (1) reinstatement of petitioner's school service was merely a ministerial function to be completed at petitioner's discretion; or, (2) the letter tolled the statutory 30–day limit for electing multiple service, allowing payment to be made for reinstatement of school service credit at any time. That decision, SERS argues, violates 71 Pa.C.S. § 5907(c), in that it would essentially render reinstatement of school service totally free, unless a member chooses to pay for it. The Board, therefore, according to SERS, acted properly in deciding that the letter was only a first step toward reinstatement, to be

followed by payment of the bill within 90 days of receiving certification of service from PSERS.

■ Next, in rebutting both petitioner's estoppel and statutory arguments, SERS points to the fact that petitioner is a highly educated individual who *unilaterally* misinterpreted the regulations (apart from any advice given her by SERS counselors) and that once the Board determines a regulation is required for "uniform administration of the system, and duly adopts the regulation, it is bound to follow the regulation." We agree.

Whether the doctrine of equitable estoppel can be applied to the Board's adverse decision regarding petitioner is, of course, the pivotal issue. The equitable estoppel doctrine as applied to a Commonwealth agency was particularly well-defined in *Hauptmann v. Department of Transportation*, 59 Pa.Commonwealth Ct. 277, 283, 429 A.2d 1207, 1210 (1981) as follows:

> The underlying premise of the estoppel cases is that the doctrine of estoppel *may* be applied to a Commonwealth agency, in cases in which it has intentionally or negligently misrepresented some material fact, knowing or having reason to know that another person will justifiably rely on that misrepresentation, and where that other person has been induced to act to his detriment because he did justifiably rely on that misrepresentation.

■ In *Finnegan v. Public School Employes' Retirement Board*, 126 Pa.Commonwealth Ct. 584, 560 A.2d 848 (1989), *petition for allowance of appeal granted*, 525 Pa. 588, 575 A.2d 118 (1990), where the factual situation was analogous to that of the present matter, the Board denied Finnegan, a public school teacher, the opportunity to buy 15 additional years of service credit that she needed for early retirement. In *Finnegan*, petitioner conceded having reviewed her system handbook which provided that credit for school service could not exceed 12 years, pursuant to Section 8304(c) of the Public School Employes' Retirement

Code.[2] Nevertheless, allegedly relying upon information given to her by PSERS representatives that she could purchase 15 years credited service, Finnegan retired based upon her misconception that she had a total of 30 years of credited service for retirement purposes. When the Board found otherwise, this Court upheld the Board's decision and reasoned that although Finnegan had relied, to her detriment, on inaccurate representations made to her by PSERS personnel, the Board, nevertheless, could not be estopped by acts of its agents or employees, from upholding a statutory provision such as the one limiting the allowable number of years for purchase of credited service. "To decide otherwise would be tantamount to giving employee errors the effect of amending the substance of a statute." *Id.,* 126 Pa.Commonwealth Ct. at 590, 560 A.2d at 851.

The same rationale is applicable to the instant matter and, although petitioner attempts to show that she did everything possible to meet her burden of proving that she justifiably relied, to her detriment, upon a counselor's erroneous advice and, therefore, should not be penalized, we must disagree.

Our review of the record establishes that the Board's 90–day time limit for making lump-sum payments to purchase credited service was clearly set forth on the billing statement sent to petitioner. Petitioner, furthermore, has attained a sufficiently high level of education to have understood the Board's regulation or, at the very least, to have made timely inquiries concerning her situation, rather than wait 5 years after her initial request for multiple service membership. The record contains substantial evidence indicating that petitioner failed to establish inducement and justifiable reliance, the essential elements of a successful estoppel argument.

Moreover, even assuming arguendo that petitioner had successfully established the elements of estoppel, there are situations, such as the present case, where estoppel will

2. 24 Pa.C.S. § 8304(c).

not be upheld against Commonwealth entities whose agents' actions are: (1) outside the scope of their authority; (2) require legislative or executive input; or (3) violate "positive law." *Ervin v. Pittsburgh,* 339 Pa. 241, 14 A.2d 297 (1940). To find otherwise would undermine the Board's responsibility to uphold its own regulations. Consistently, this Court has recognized that "an administrative agency's interpretation of its own regulations is controlling unless the interpretation is plainly erroneous or inconsistent with either the regulation or the statute under which it is promulgated." *Clark* 118 Pa.Commonwealth at 589, 546 A.2d at 1279.

Accordingly, based on the foregoing considerations, the order of the Board is affirmed.

## ORDER

AND NOW, this 10th day of June, 1991, the order of the State Employes' Retirement Board in the above-captioned matter is affirmed.