Douglas BROOKS, Petitioner,

v.

STATE EMPLOYES' RETIREMENT
BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 21, 2000.

Decided March 15, 2000.

Publication Ordered June 15, 2000.

Douglas Brooks, petitioner, pro se.

Salvatore A. Darigo, Jr., and Brian E. McDonough, Harrisburg, for respondent.

Before PELLEGRINI, J., FLAHERTY, J., and McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

Douglas Brooks (Claimant) petitions, *pro se*, for review from an order of the State Employes' Retirement Board (Board), denying his request for a refund of excess retirement contributions, plus interest, for the period during which the Department of Corrections (DOC) miscoded the automatic buyout of compensatory holiday leave as overtime earnings. We affirm.

On April 22, 1971, Claimant became a member of the State Employes' Retirement System (SERS) when he began employment with DOC at the State Correctional Institute at Rockview (SCI Rockview). The employees at SCI Rockview worked rotating shifts of six-days on duty and two-days off, requiring that they work holidays falling within their rotation.

Pursuant to a collective bargaining agreement between the American Federation of State, County and Municipal Employees (AFSCME) and DOC, employees at SCI Rockview and seven other state correctional institutions were automatically paid for compensatory time earned by working on holidays, in lieu of being provided with opportunities to use their compensatory leave. For purposes of calculating retirement contributions, the amount of this automatic buyout of compensatory time was credited as overtime to the salaries of employees at SCI Rockview, including Claimant.

In 1993, an audit revealed that at eight correctional facilities, including SCI Rock-

view, DOC had incorrectly coded the automatic buyout of holiday compensatory time as overtime. Such holiday compensatory time should have been coded as the purchase of regular leave. When this miscoding was discovered it had been taking place at the eight correctional institutions for approximately twenty years. As a result of this miscoding, the earnings statements that DOC sent to SERS were overstated and resulted in excess contributions being made to the SERS accounts of affected DOC employees, including Claimant. DOC was ordered to remedy the miscoding.[1]

AFSCME, as the bargaining representative for all corrections officers including Claimant, challenged the correction as a violation of its collective bargaining agreement with DOC, as it adversely affected its members by reducing their retirement covered earnings. The overstated earnings reports to SERS meant that, as a result of the improper coding of automatic buyouts, Claimant had contributed more money to SERS than he otherwise would have. Further, any refund to Claimant would lower his retirement benefits and may cause him to pay higher taxes.

By letter to SERS dated January 6, 1997, Claimant requested a refund of the "overpayment" he made to SERS as a result of the erroneously coded automatic buyouts. SERS denied Claimant's request. In so doing, SERS stated that the policy regarding the buyout of accumulated compensatory time had been changed on a prospective basis only and, as such,

Claimant's request for a refund must be denied.

Thereafter, on May 10, 1997, Claimant appealed SERS' decision to the Board and hearings were held on the matter. Claimant waived his right to have an attorney present with him and he testified on his own behalf. SERS presented the testimony of Gayle W. Martin, Administrative Assistant in the Bureau of Benefit Administration, Louise A. Bell, Director of the Member Services Division, Carol S. Scott, Contract Negotiations and Administration Coordinator and Linda M. Miller, Director of Benefits Determination Division. Subsequently, on October 13, 1998, at the conclusion of the presentation of evidence, the hearing examiner recommended that the Board grant Claimant's request for a refund of excess contributions, plus interest, for the period during which DOC miscoded the automatic buyout of holiday leave overtime earnings.

Both Claimant and SERS filed exceptions to the hearing examiner's opinion. Additionally, Claimant filed opposing exceptions to SERS' exceptions. In an opinion and order dated May 28, 1999, the Board denied Claimant's request for a refund of excess contributions. In so doing, the Board reasoned that Section 5954(b) of the State Employees' Retirement Code (Code)[2] contains plain language which sets limits on SERS' ability to adjust payment errors.[3] Here, the Board stated that:

neither the Claimant nor SERS have been able to determine exactly how long the miscoded payments were made and exactly how much was erroneously with-

---

1. We note that the order for DOC to remedy the miscoding was upheld by an arbitrator, effective July 1, 1996, and AFSCME did not appeal the decision. The arbitrator's decision did *not* address the issue of retroactive relief in the nature of refunds of contributions and is *not* at issue in the instant appeal.

2. 71 Pa.C.S. § 5954(b).

3. This Section provides the following:
(b) **Adjustment of Errors.**—Should any change or mistake in records result in any member, beneficiary or survivor annuitant

receiving from the system more or less than he would have been entitled to receive had the records been correct, then regardless of the intentional or unintentional nature of the error and upon the discovery of such error, the board shall correct the error and *so far as practicable* shall adjust the payments which may be made for and to such person in such a manner that the actuarial equivalent of the benefit to which he was correctly entitled shall be paid. (Emphasis added).

held from the Claimant. These circumstances, combined with the number of active and retired members impacted by such a recalculation and the inability of the Commonwealth to make such a calculation for each and every member affected, make Claimant's demand for a refund impractical if not impossible.

(Opinion of the Board at 4). Thus, having determined that Claimant's request for a refund was not practical, the Board held that, in accordance with Section 5954(b) of the Code, the adjustment of the payments made to Claimant was *not* mandated. The instant appeal by Claimant resulted.

■ Preliminarily, we note that Claimant's assertion of error is not clearly stated, but in light of his status as a *pro se* litigant we will address what we have discerned as his argument to this Court. On appeal to this Court,[4] Claimant contends that the Board erred when it denied his request for a refund of excess retirement contributions, plus interest. Specifically, Claimant argues that under Section 5954(b) of the Code SERS is required to adjust payment to him.

We do not agree. As previously stated, Section 5954(b) of the Code provides as follows:

**(b) Adjustment of Errors.**—Should any change or mistake in records result in any member, beneficiary or survivor annuitant receiving from the system more or less than he would have been entitled to receive had the records been correct, then regardless of the intentional or unintentional nature of the error and *upon the discovery of such error, the board shall correct the error and so far as practicable shall adjust the payments* which may be made for and to such person in such a manner that the actuarial equivalent of the benefit to which he

was correctly entitled shall be paid. (Emphasis added).

■ A thorough review of the record reveals that it is undisputed that, upon the discovery of the miscoding, DOC was ordered to correct such error. What is in dispute is whether the adjustment of payments made by Claimant in the form of a refund is practicable and therefore mandated by Section 5954(b) of the Code.

Here, the record shows that neither Claimant nor SERS presented evidence regarding the exact period of time that the miscoded payments were made, nor the exact amount of funds that were erroneously withheld from Claimant's earnings and mistakenly classified as part of his retirement contribution. (N.T. of October 8, 1997, hearing at 10–54; N.T. of April 9, 1998, hearing at 5–37). Moreover, the evidence of record demonstrates that Claimant was only one of many employees, both active and now retired, whose retirement contributions were affected by DOC's miscoding error. (N.T. of April 9, 1998, hearing at 11–12; N.T. of October 8, 1997, hearing at 37–38). Furthermore, the record shows that to grant Claimant's request for a refund would necessitate the recalculation of retirement contributions for a great number of employees and would effectively bring SERS "to its knees." (N.T. of April 9, 1998, hearing at 11; 12; N.T. of October 8, 1997, hearing at 37–38).

Thus, we cannot say that the Board erred when it reasoned that Claimant's request for a refund was *not* practical and therefore *not* mandated by Section 5954(b) of the Code. As such, we conclude that the Board's denial of Claimant's request for a refund of excess retirement contributions, plus interest, for the period during which DOC miscoded the automatic buyout of compensatory holiday leave as overtime earnings was proper.[5]

4. Our standard of review of the final adjudication of an administrative board is limited to a determination of whether the adjudication is supported by substantial evidence, is not in accordance with law, or whether constitution-

al rights were violated. *Costello v. State Employes' Retirement Board,* 141 Pa.Cmwlth. 19, 596 A.2d 260 (1991).

5. By way of an aside, we note that the record reveals that, upon his retirement from DOC,

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 15th day of March, 2000, it is hereby ordered that the order of the State Employes' Retirement Board is AFFIRMED.

Claimant will receive all of the erroneous retirement contributions he made, plus interest thereon. (N.T. of October 8, 1997, hearing at 34–35).