Willard Loch, Petitioner *v.* Commonwealth of Pennsylvania, State Employes' Retirement Board, Respondent.

Argued October 18, 1984, before Judges CRAIG and PALLADINO and Senior Judge BARBIERI, sitting as a panel of three.

*Joseph L. Rosenfeld,* for petitioner.

*Nicholas J. Marcucci,* Assistant Counsel, with him, *Marsha V. Mills,* Assistant Counsel, for respondent.

OPINION BY JUDGE BARBIERI, February 28, 1985:

Willard L. Loch appeals here a decision and order of the State Employes' Retirement Board (Board) denying Mr. Loch's application for a disability annuity.

Mr. Loch was first employed by the Pennsylvania Liquor Control Board in 1959 and, at the time of his separation from employment, he worked as a Liquor Store Clerk II. On November 1, 1976, he fell down a flight of stairs and fractured two vertebrae and did not return to work thereafter.[1]

A hearing was held on Mr. Loch's claim on June 27, 1980. Mr. Loch, with counsel, appeared and testified with regard to the constant pain in his back and left leg as a result of fractured vertebrae, breathing problems as a result of emphysema, a sleeping disorder from which he suffers, heart problems and

---

[1] The record does not indicate whether the accident occurred at work. However, the fact that Claimant is receiving workmen's compensation benefits would indicate that his injuries are work related.

hypertension. His blood pressure has been recorded at 169/129 controlled by "Inderal, 120 milligrams, four times a day." (Record 19a.) Opinion letters from Mr. Loch's several physicians were admitted into evidence without objection.

The hearing examiner's report contained the following:

Further diagnosis was given as to:

1. 5th lumbar moved posterior on sacrum
2. Hypertension
3. Exogenous obesity
4. Post concussion and back injury

Dr. William Boucher, a cardiovascular specialist stated:

At this time his diagnoses include:

1. Coronary artery disease
    A. Subendocardial myocardial inffraction [sic]. August 1978 in San Francisco.
    B. Angina pectoris—suspected.
2. Hypertension.
3. Exogenous obesity.
4. Post concussion and back injury.

Dr. Mark Berger, a specialist in internal medicine and an employee of the Board opined, after reviewing the documentation submitted by Mr. Loch, that there was insufficient objective documentation to warrant recommendation that Mr. Loch receive a disability annuity.

The hearing examiner found that Mr. Loch was capable of performing the job in which he was previously employed and recommended to the Board that the claimant's application for disability annuity be denied. Based upon the hearing examiner's findings and conclusions of law, the Board denied Mr. Loch's request for disability annuity. The present appeal followed.

Section 5905 of the State Employees Retirement Code (Code), 71 Pa. C. S. 5905, at subsection (c)(1) provides:

> (c) Disability annuities—In every case where the board has received an application for a disability annuity based upon physical or mental incapacity for the performance of the job for which the member is employed, taking into account relevant decisions by The Pennsylvania Workmen's Compensation Board, the board *shall*:
>
> (1) through the chief medical examiner, *have the applicant examined* and on the basis of said examination, and the subsequent recommendation by the chief medical examiner regarding the applicant's medical qualification for a disability annuity along with such other recommendations which he may make with respect to the permanency of disability or the need for subsequent reexaminations, make a finding of disability and whether or not the disability is service connected or nondisability and in the case of disability establish an effective date of disability and the terms and conditions regarding subsequent reexaminations; . . . . (Emphasis added.)

Thus, the Code requires that each applicant for a disability annuity be examined as arranged by the Board's chief medical examiner who shall make a recommendation whether a disability exists and whether it is service connected. Our review of the record in this case convinces us that this is ideally a case calling for the kind of medical study and treatment which the Legislature prescribed in Section 5905. It is uncontradicted that Claimant is receiving benefits for total disability resulting from injuries suffered

on November 1, 1976, from at least three sources: (1) from Workmen's Compensation benefits paid by the State Workers' Insurance Fund, (2) from the Social Security Administration, and (3) apparently also from the Prudential Insurance Company. In addition, he receives benefits from the Veteran's Administration for head injuries suffered during the Korean War for which he has since carried a "silver plate" in his head. We note that the Board is required by Section 5905, quoted above, in making a determination as to disability, to take "into account relevant decisions of The Pennsylvania Workmen's Compensation Board."[2] Furthermore, it appears that the Board has rejected the claim in this case principally on the basis of a single orthopedic pronouncement in a report submitted to it,[3] whereas Claimant has presented many other medical problems from which he suffers and for which there is support in medical reports made part of the record.

In any event, however, we feel that our disposition here should be controlled by our decision in *Burrows v. State Employes' Retirement Board*, 76 Pa. Commonwealth Ct. 84, 463 A.2d 106 (1983) where the circumstances in that case on which the Board denied benefits are strikingly similar to those in this case. As in this case, there was no examination by a Board physician designated by the chief medical examiner, and the hearing examiner found there, also, that the applicant failed to carry his burden of proving that

---

[2] We read this as requiring application of workmen's compensation decisions as approved and ruled upon by this Court.

[3] The Board "quoted [Dr. David Sussman] that Mr. Loch could return to work if Mr. Loch did not have to unload cases of liquor from a truck." Dr. Sussman added: "Perhaps there is a position in his work, not as a manager, but just as a clerk that would meet with these requirements."

his condition rendered him disabled for performing the duties of his former position. In ordering that the case be remanded, we stated:

> In the case *sub judice,* the Board affiliated physician, even while noting the paucity of medical information, did nothing other than review Petitioner's medical documents. A review of the record reveals no actual physical examination to have been conducted other than by doctors retained by Petitioner. Accordingly, we must remand this case so that the necessary examination can be conducted, to be followed by further proceedings as may be necessary for incorporation into the record and consideration of the results thereof.

In passing, we wish to note that under the mandate in Section 5905 that Workmen's Compensation decisions be considered, if there is disability, it is not sufficient to assert simply that the employee is capable of performing some of the duties of his former position, since the burden is on the employer in such a case of a disabled employee to demonstrate the availability of suitable work, and this burden of the employer is not satisfied where the claimant has made application for the position and has been rejected. In *Yorktowne Paper Mills v. Workmen's Compensation Appeal Board (Beard),* 60 Pa. Commonwealth Ct. 608, 432 A.2d 308 (1981), we stated:

> An employer may satisfy its burden on the issue of available work by showing general availability of suitable jobs in the relevant labor market. Drcher v. Workmen's Compensation Appeal Board, 38 Pa. Commonwealth Ct. 473, 393 A.2d 1081 (1978). However, where as in this case specific jobs are offered in an attempt to meet this burden a claimant can rebut such

evidence by showing that the specific jobs are not in fact available because he cannot perform the work due to his disability, or he is not qualified in other respects for the employment, *or he has applied for the positions and has been rejected.*[4]  (Emphasis added.)

Accordingly, this case will be remanded to the Board for such examinations as may be arranged by the Chief Medical Examiner and for the recording, at a hearing, of the recommendations of the Chief Medical Examiner whether a disability exists and whether it is service connected with the right of Appellant to offer evidence and testimony directly or in rebuttal, and for such further proceedings as may be necessary for incorporation into the record and consideration of the results thereof.[5]

### ORDER

Now, February 28, 1985, the decision and order of the State Employes' Retirement Board in the above-captioned matter is hereby vacated and the matter is remanded for further proceedings consistent with this opinion.  Jurisdiction is relinquished.

Judge WILLIAMS, JR., did not participate in the decision in this case.

---

[4] Appellant testified without contradiction that his immediate supervisor, John Gumbo, who was not called, had refused him re-employment. Appellant testified:

A.   John Gumbo.

Q.   He was your immediate supervisor?

A.   Yes.

Q.   What, exactly, did he tell you regarding the listing?

A.   He told me that if I wanted to have that job there, he said I had to be able to unload the tractor trailer, myself.  After I hurt myself, I tried to go back to work several times and they said no.

[5] Having so held, it is unnecessary to address Mr. Loch's challenge based on the merits of the Board's decision.