Florence Moser, Petitioner *v.* Commonwealth of Pennsylvania, State Employees' Retirement Board, Respondent.

Argued October 15, 1984, before Judges WILLIAMS, JR. and MACPHAIL and Senior Judge BARBIERI, sitting as a panel of three.

*James McGarrity*, for petitioner.

*Nicholas Joseph Marcucci*, Assistant Counsel, for respondent.

OPINION BY JUDGE BARBIERI, May 23, 1985:

Florence Moser, Claimant, appeals here an order of the State Employees' Retirement Board (Board) denying her request for a long-term disability annuity.

Claimant was employed by the Commonwealth at the Norristown State Hospital as a Food Service Worker I from December, 1967 until January, 1976. Her position involved heavy and strenuous work. On September 16, 1970, while lifting a screen at work, Claimant experienced chest pains and was hospitalized. It was then diagnosed that she suffered from coronary artery disease with a "suspect" infarction. She was in intensive care for two days with hospitalization continuing for approximately one month, spending an additional month at home, after which she returned to work. She continued to work until January 18, 1976, when she retired because of her disabil-

ity. It is undisputed that Claimant's position involved heavy work, lifting, bending, cleaning and other duties of a strenuous nature.

Hearings were held before a Board hearing examiner on July 25, 1980 and January 24, 1983. At the hearing of July 25, 1980, Claimant presented several medical records showing evidence of coronary artery disease. Among these, Dr. Frederick Lytel, Claimant's attending physician, in a report submitted to the Board on February 2, 1976, diagnosed Claimant's ailments as coronary artery disease, hyperlipidemia, and degenerative joint disease. On December 5, 1977, following a treadmill test which Claimant could not complete as a result of fatigue, Dr. Leo Konecke, a cardiologist, found a 45% functional aerobic impairment. Dr. Konecke also supported Dr. Lytel's diagnosis of a suspected subendocardial infarction. Dr. Sandra Harmon, Dr. Lytel's successor on his retirement from practice, in her report to the Board dated January 12, 1978, diagnosed coronary artery disease, hyperlipedemia, degenerative joint disease, and chronic obstructive pulmonary disease. Dr. Harmon also stated that the symptoms were relieved with vasodilators and that, based upon repeated discussions with and examinations of Claimant, she firmly believed that "coronary artery disease [was present] whether it be on the basis of arterial spasm or atherosclerosis." Dr. Harmon's evaluation of Claimant in a formal report to the Board on January 12, 1978, is stated as follows:

This patient is unable to perform the duties required by her Commonwealth employment because of the problems as outlined above. I believe that this patient, Mrs. Moser, is permanently disabled.

At the hearing of July 25, 1980, it was established that the United States Social Security Administration had found Claimant to be totally disabled and had

awarded disability payments to her. The record also establishes that on the "SUMMARY EVALUA-TION" prepared by Claimant's employer, Norristown State Hospital, in its "SEPARATION EVALUA-TION" Report, the following appears:

Although this employee is a very good worker, because of her heart condition and other physical problems we would not consider re-hiring.

The Board adduced the testimony of two medical witnesses, both specialists in internal medicine, Mark Berger, M.D. and Stanley R. Goldman, M.D., both regularly employed by the Board and neither of them having examined the Claimant. Dr. Berger's role is to advise the Board of the medical aspects of disability applications and "make recommendations as to the medical merits," an employment which he had had for approximately six years as of the date when his testimony was taken on July 25, 1980. His testimony, entirely based upon records that were presented to him, was directed solely to the Claimant's heart complaints. His opinion advising against the granting of benefits, was that the "cardiograms failed to *objectively* substantiate any evidence of coronary disease,"[1] a lack of "*objective* documentation of coronary disease."[2] Specifically, he stated further that "[o]ur opinion is that there is no *objective* evidence of coronary artery disease; and, therefore, with the proper motivation, she could continue to carry out her job as described in her job description."[3]

Dr. Berger testified further, as follows:

Now, so that I can make the point I'm trying to very clearly, I cannot say categorically that this woman does not have coronary artery

---

[1] Hearing 7/25/80, page 9.

[2] *Id.*, page 10.

[3] *Id.*, pages 10-11.

disease. I'm not implying that at all. I'm saying that the approach that we take is the burden of proof is on the claimant, and we do not see proof here, over a ten-year period of time, by any *objective* documentation, that this woman has coronary artery disease. Pain itself is not *objective* proof.

She may have coronary artery disease. If she has objectively proven coronary artery disease, it would be detrimental to her health to continue this job. . . .

. . . .

A. Well, in answering your question, it is important that you realize that *I have never examined or evaluated this patient.* I am not in a position to speak for her doctors and what they have recommended to her . . . she has undergone a severe warning in 1970, and now has survived ten more years, her luck is running out.

Q. Did you, as the medical advisor to the Board, request from her doctor a coronary angioography [sic] and the results?

A. We are not in a position to request specific studies, to make clinical recommendations to doctors, because we are unable to accept the responsibility and the State is unable to accept the responsibility to be the doctors of patients we haven't seen. (Emphasis added.)

Dr. Goldman described his role as follows:[4]

Q. What is your relationship with the State Employees' Retirement System?

---

[4] Dr. Goldman testified as a Board witness at the hearing on January 24, 1983. The excerpts from his testimony that follow appear at pages 36, 38, 42-43, 44-45 and 48-49.

A.   I am an independent contractor that was hired to review the medical information put forth by the claimant for the purpose of disability and to make a determination from a medical standpoint whether or not disability has been justified.

. . . .

A.   I would like to expound on that a little bit, so the Claimant understands how our decision has come about.   The law requires that an independent physician review the claim without seeing the individual patient themself.[5]   Therefore, *I have never seen the patient prior to this hearing.*   We have received information as it went along.   We would review it.   If one of the two contractors agrees that there is a disability, it only takes one to grant the disability.   If, however, there is some discrepancy and one physician does not allow the disability, the other individual then goes over the same information.   If both say no, then it is denied.   (Emphasis added.)

. . . .

Q.   Correct me if I am wrong, but you are not saying that she might not be in discomfort sometimes?

A.   I am certainly not saying she does not suffer chest pain or hip pain, or any pain she has. The chest discomfort that she complains of is certainly, by history, suggestive of angina pectoris.   There are many pains that could com-

---

[5] We have found no "law" such as described by Dr. Goldman and none has been called to our attention.   As will appear, however, the Code does require that the Board procure a medical examination.

mend the numbness she gets in her arms and into her fingers, with this discomfort and chest pain and the shortness of breath that occurs with it, may be related to a hyper-ventilation or an increase in restoration problem. Breathing alone, can cause all the symptoms she has told us today. A number of other problems could cause this.

No, I certainly am not saying that she does not have pain and that she does not feel pain and discomfort.

Q. So based upon everything that you have heard today and have read prior to today that is in the record and based upon Mrs. Moser's job description, what is your medical opinion as to her disability?

A. The information that we have received verbally and on paper does not support a claim for disability for *coronary artery disease* at this time.

Dr. Goldman, however, testified further on cross-examination, as follows:

Q. Are you saying Mrs. Moser does not have coronary artery disease?

A. *I raise the possibility that she does not.* She very well may, but the evidence that has been brought before me *in no way is conclusive beyond a reasonable doubt* that she has coronary disease.

Q. Realizing that, you are not saying that she does not have the disease?

A. No, it is impossible for me to say that.

Q. Realizing that you have testified that she did not qualify for disability in your opinion, after hearing the testimony of what her job description consisted of, and collectively all her problems according to arthritis, and what she testified to, are you saying she is capable of performing that work at the present time?

A. The testimony today has been based on coronary disease exclusively. That is what I have gone on. The hip discomfort and pain has been brought up just recently.

. . . .

This is from the history she has given to me now. Again, I am not her physician. *I have not examined her.* I can only take the deposition history and what she has told me. I am trying to draw conclusions based on that only. I have not seen her when she was presented to the emergency room. I am not saying I would have done anything different on her initially. I am sure I would have admitted her as well. (Emphasis added.)

It is noteworthy that benefits were awarded after the hearing on July 25, 1980 and that the findings and other remarks in the opinion report of the hearing examiner indicate compensability, but with the recommendation for the grant of benefits conditioned on "her obtaining the services of a qualified cardiologist and the testing necessary to demonstrate the existence of *objective* cardiac difficulties." (Emphasis added.) At the subsequent hearing on January 24, 1983, the January 20, 1983 report of Dr. James W. Lewis, M.D., a specialist in internal medicine, was offered by Claimant. Dr. Lewis, having examined the Claimant on January 20, 1983, concluded:

Her current electrocardiograms performed on 1-17-83 shows ST segment elevation and T wave depression which is indicative of *coronary artery disease.*

According to the history as given by this patient and according to evidence of past cardiac workups Mrs. Moser's *current stable condition* would be very likely be *jeopardized* if she were to *return* to any type of *strenuous* employment.

It is my impression that the above named person *should not* return to her former place of employment or any other similar position. (Emphasis in original.)

Our examination of the record and of the applicable law convinces us that we must remand, regrettable as this may be in light of the extended time that this claim has been pending.

While it is true, as is asserted on behalf of the Board, that the burden of proof on a claim such as this one is on the applicant for benefits, Claimant has raised the issue as to the proper standard of proof required for the Claimant to meet her burden and, also whether or not the Board's procedures are legally consistent with statutory mandates.

The excerpts from the medical testimony quoted above demonstrate, in our view, the following: (1) that rules of the procedures of the Board permit controlling judgments as to compensability to be made by medical advisors who have not examined the applicant for benefits; (2) that in this case no medical examination was made by anyone on the Board's behalf, but judgments were based entirely upon reports and writing prepared and presented by others; (3) that although multiple ailments and diagnoses of allegedly disabling conditions were presented and described, the

Board's medical advisers considered only the coronary complaints in evaluating Claimant's application for a disability annuity; (4) that as to Claimant's burden of proof, what the examiners call "objective" evidence or documentation was deemed the exclusive requisite for a finding of disability; and a controlling adviser (Dr. Goldman) apparently required for a finding of compensable disability that it be proved by evidence that "is conclusive beyond a reasonable doubt;" and that, although the Board's medical opinion adopted by it was presented by physicians whose specialty was internal medicine, the Board apparently was influenced by its hearing examiner's view that Claimant's burden of proof could not be met unless she obtained "the services of a qualified cardiologist and the testing necessary to demonstrate the existence of objective cardiac difficulties."[6]

The observations enumerated raise questions which we note in passing, for our obligation to remand obviates reaching the merits of these possible issues. We turn now, therefore, to the statutory considerations that require the remand.

At the outset we note that Section 5308(c) of the State Employees' Retirement Code (Code)[7] provides that if an employee "prior to attainment of superannuation age . . . becomes mentally or physically incapable of continuing to perform the duties for which he is employed," he shall "be entitled to a disability annuity." Section 5905(c) of the Code[8] requires that, in making this determination, the Board must consider

---

[6] The second of the Conclusions of Law of the hearing examiner in his opinion following the hearing on July 25, 1980. See also the second conclusion of the same examiner after the hearing on January 24, 1983 and the Board's third conclusion of law in its adjudication of September 28, 1983.

[7] 71 Pa. C. S. §5308(c).

[8] 71 Pa. C. S. §5905(c).

relevant decisions of the Workmen's Compensation Appeal Board.[9]

Section 5905 of the State Employees' Retirement Code (Code), 71 Pa. C. S. 5905, at subsection (c)(1) provides:

> (c)   Disability annuities.—In every case where the board has received an application for a disability annuity based upon physical or mental incapacity for the performance of the job for which the member is employed, taking into account relevant decisions by The Pennsylvania Workmen's Compensation Board, the board *shall:*
>
> (1)   through the chief medical examiner, *have the applicant examined* and on the basis of said examination, and the subsequent recommendation by the chief medical examiner regarding the applicant's medical qualification for a disability annuity along with such other recommendations which he may make with respect to the permanency of disability or the need for subsequent re-examinations, make a finding of disability and whether or not the disability is service connected or nondisability and in the case of disability establish an effective date of disability and the terms and conditions regarding subsequent reexaminations; . . . . (Emphasis added.)

We stated in the quite similar case of *Loch v. Commonwealth of Pennsylvania, State Employes' Retire-*

---

[9] For example, in *JAB Enterprises v. Workmen's Compensation Appeal Board*, 79 Pa. Commonwealth Ct. 638, 641-642, 470 A.2d 210, 212 (1984), we reversed a decision by the Workmen's compensation authorities on this Court's holding that a "lack of an *objective* basis for pain does not establish that the disability has ended or been reduced . . . the fact that her pain is subjective in nature does not negate the fact that she still suffers from it." (Emphasis added.)

*ment Board,*      Pa. Commonwealth Ct.      , 488 A.2d 398 (1985), on remanding:

> Thus, the Code requires that each applicant for a disability annuity be examined as arranged by the Board's chief medical examiner who shall make a recommendation whether a disability exists and whether it is service connected. Our review of the record in this case convinces us that this is ideally a case calling for the kind of medical study and treatment which the Legislature prescribed in Section 5905.
>
> In any event, however, we feel that our disposition here should be controlled by our decision in Burrows v. State Employes' Retirement Board, 76 Pa. Commonwealth Ct. 84, 463 A.2d 106 (1983) where the circumstances in that case on which the Board denied benefits are strikingly similar to those in this case. As in this case, there was no examination by a Board physician designated by the chief medical examiner, and the hearing examiner found there, also, that the applicant failed to carry his burden of proving that his condition rendered him disabled for performing the duties of his former position. In ordering that the case be remanded, we stated:
>
>> In the case *sub judice,* the Board affiliated physician, even while noting the paucity of medical information, did nothing other than review Petitioner's medical documents. A review of the record reveals no actual physical examination to have been conducted other than by doctors retained by Petitioner. Accordingly, we must remand this case so that the necessary examination can be conducted, to be followed by further proceedings as may be necessary for in-

corporation into the record and consideration of the results thereof.

Accordingly, as in *Burrows*, this case will be remanded to the Board for such medical examinations as may be arranged by the Chief Medical Examiner and for such further hearing or hearings as may be required by the Board or Claimant and for such other procedures as may be necessary to effectively comply with the requirements of the Code.

#### ORDER

Now, May 23, 1985, the decision and order of the State Employees' Retirement Board in the above-captioned matter is hereby vacated and the matter is remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.

Judge WILLIAMS, JR. did not participate in the decision in this case.