628 A.2d 491

**Karen V. DANEKER, Petitioner,**

v.

**STATE EMPLOYES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 14, 1992.

Decided June 30, 1993.

512

John A. Bednarz, Jr., for petitioner.

Susan Ray Kempski, for respondent.

Before PALLADINO and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

Karen V. Daneker appeals from an order of the State Employes' Retirement Board (SERB) granting her a non-permanent disability retirement annuity but basing those benefits on a non-service connected disability. In an issue of first impression before this court, we must determine whether, under the State Employees' Retirement Code (Code), 71 Pa.C.S. §§ 5101–5956, and the regulations promulgated thereunder, the SERB may grant service connected disability retirement benefits to a claimant without a prior award to that claimant under The Pennsylvania Workmen's Compensation Act (Act).[1] We now hold that the SERB must treat an annuitant's disability as non-service connected unless and until the Workmen's Compensation Appeal Board (WCAB) awards benefits to the annuitant under the Act.

Daneker was employed by the Pennsylvania Department of Public Welfare at the White Haven Center (White Haven), a

1. The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1–1031.

care facility for mentally challenged individuals, when she enrolled in the State Employees' Retirement System (SERS). Initially, Daneker worked in the clothing room at White Haven; however, when this position was abolished, she was reassigned to the position of residential service aide and transferred to the evening shift.[2] With the job change, Daneker also assumed markedly different duties, taking on responsibility for the basic daily personal needs of White Haven residents in addition to their general supervision, recreation and education. While employed as a residential service aide, Daneker witnessed and was involved in a number of unpleasant and upsetting resident-related incidents. In addition, Daneker was accused of breaching client confidentiality when she responded to questions posed by a physician at a nearby hospital regarding the treatment of a White Haven patient.

Concurrent with her work difficulties, Daneker developed gastrointestinal problems. By mid–1988, she complained of agitation, nausea, abdominal pains and vomiting and began treatment with Dr. Gregory Fino. Dr. Fino connected Daneker's problems to work-related stress and anxiety and suggested that she could no longer perform her employment duties. In September 1988, following an unpaid leave, Daneker left White Haven. Subsequently, Daneker sought psychiatric treatment from Dr. Richard Fischbein, who diagnosed Daneker's condition as major depressive reaction to her prior employment at White Haven. Dr. Fischbein agreed with Dr. Fino that Daneker could not return to her former job.

Daneker filed an application for a retirement disability annuity (Application) on October 5, 1988, which the SERB denied in accordance with the recommendations of SERS medical examiners. Daneker appealed the denial and an administrative hearing was held before a hearing examiner.

2. Because Daneker suffered from diabetes and needed to monitor her diet, she requested a transfer back to the day shift. The request was strongly resisted but eventually granted. With her retransfer, Daneker was assigned to work with geriatric men, which she found extremely difficult.

After a review of the record evidence,[3] the hearing examiner determined that Daneker could not return to work at White Haven without exacerbating her problems and granted Daneker non-permanent retirement disability benefits as of the time she left her employment. However, the hearing examiner also specifically found that Daneker's disability did not result from her employment duties, (hearing examiner's "Finding of Fact" No. 28), and was non-service connected, (hearing examiner's "Conclusion of Law" No. 2).[4] Daneker filed exceptions with the SERB, objecting only to these particular findings.

The SERB, in a separate opinion, agreed with the hearing examiner's determination to grant Daneker a temporary disability retirement allowance, subject to future SERB review. The SERB also adopted the hearing examiner's "Finding of Fact" No. 28, (SERB "Finding of Fact" No. 18), and "Conclusion of Law" No. 2, (SERB Conclusion of Law No. 2), stating that it was constrained to agree that the record evidence was insufficient to establish that Daneker's disability was service connected within the meaning of the Code. Daneker appeals, renewing her objection to the SERB's "Finding of Fact" and corresponding "Conclusion of Law"[5] which identify her disability as non-service connected. Daneker has a separate claim currently pending before the WCAB and fears that because of these SERB findings, the principles of res judicata or collateral estoppel may preclude the WCAB from consider-

3. Daneker and her husband both testified on behalf of Daneker. In addition, Daneker presented letters and reports from various physicians, including Drs. Fino and Fischbein. The record here also included, on behalf of the SERS, the testimony of SERS employee, Gayle Martin, an administrative assistant in the Bureau of Benefit Administration and Dr. Stanley Goldman. The SERS also offered documentary evidence in the form of letters and medical reports.

4. Although the hearing examiner and the SERB "found" that Daneker's disability did not result from employment and adopted a "conclusion of law" that it was non-service connected, these findings and conclusions do not foreclose Daneker's future receipt of service connected disability payments. Rather, these supplemental payments depend solely on the adjudication of the WCAB, and the annuitant's disability is treated as non-service connected unless and until the WCAB determines that it was causally related to his employment.

5. In all other respects, Daneker is not appealing the SERB's determination.

ing the work-relatedness of her condition with regard to that claim.

On appeal,[6] Daneker argues that because the medical reports of Drs. Fino and Fischbein were sufficient to prove that employment stress caused both her physical ailments and her depression, we should reverse the SERB's determination that Daneker's disability was non-service connected. Alternatively, Daneker suggests that we should remand to the SERB on this issue to await resolution of her workmen's compensation claim; in the meantime, Daneker would continue to receive normal state disability retirement benefits, without the supplement for service connected disability. Daneker explains that such a decision would prevent the workmen's compensation carrier from asserting the possible defenses of res judicata or collateral estoppel based on the SERB findings and enable her to fully pursue her workmen's compensation claim.

The SERB counters, asserting that its finding of non-service connected disability was made in accordance with the Code provisions and regulations by which it is bound, and it is not free to disregard those provisions and regulations simply because of the potential effect its decision may have on other pending or future claims.

At the outset, we will set forth the Code sections and regulations relevant to our determination here. General eligibility for disability annuities is addressed in Code section 5308(c), 71 Pa.C.S. § 5308(c), as follows:

(c) **Disability annuity.**—An active member or inactive member on leave without pay who has credit for at least five years of service ... shall, upon compliance with section 5907(k),[7] be entitled to a disability annuity if prior to

---

6. Our scope of review of an administrative board's final adjudication is limited to determining whether the adjudication is supported by substantial evidence, is in accordance with law, or whether constitutional rights were violated. *Costello v. State Employes' Retirement Board,* 141 Pa.Commonwealth Ct. 19, 596 A.2d 260 (1991).

7. Code section 5907(k), 71 Pa.C.S. § 5907(k), deals with the application for benefits, stating:

attainment of superannuation age he becomes mentally or physically incapable of continuing to perform the duties for which he is employed and qualifies in accordance with the provisions of section 5905(c)(1)....

Section 5905(c)(1) of the Code, 71 Pa.C.S. 5905(c)(1), provides:

(c) Disability annuities.—In every case where the board has received an application for a disability annuity based upon physical or mental incapacity for the performance of the job for which the member is employed, *taking into account relevant decisions by The Pennsylvania Workmen's Compensation Board*, the board shall:

(1) through the medical examiner, have the application and any supporting medical records and other documentation submitted with the application reviewed and on the basis of said review, and the subsequent recommendation by the medical examiner regarding the applicant's medical qualification for a disability annuity along with such other recommendations which he may make with respect to the permanency of disability or the need for subsequent reviews, *make a finding of disability and whether or not the disability is service connected* or nondisability and in the case of disability establish an effective date of disability and the terms and conditions regarding subsequent reviews;

*Id.* (emphasis added).

Once a claimant is deemed eligible to receive a disability annuity, as Daneker was here, the SERB must then calculate the annuity amount in accordance with the statutory formula set forth in 71 Pa.C.S. § 5704(a); however, this amount may be subject to adjustment. Relevant to this case is the benefit supplement found at Code section 5704(f), 71 Pa.C.S. § 5704(f), which provides:

(k) Disability annuities.—If service of a member who is under superannuation age is terminated due to his physical or mental incapacity for the performance of duty, an application for a disability annuity with or without a supplement for a service connected disability may be executed by him or by a person legally authorized to act on his behalf.

**(f) Supplement for service connected disability.**—If a member has been found eligible for a disability annuity and *if the disability has been found to be a service connected disability, such member shall receive a supplement equal to 70% of his final average salary less the sum of the annuity as determined under subsection (a) and any payments paid or payable on account of such disability under the act of June 2, 1915 (P.L. 736, No. 338), known as "The Pennsylvania Workmen's Compensation Act", the act of June 21, 1939 (P.L. 566, No. 284), known as the Pennsylvania Occupational Disease Act'* and the Federal Social Security Act, 42 U.S.C.A. § 301 et seq. *Such supplement shall continue as long as he is determined to be disabled on account of his service connected disability in accordance with 'The Pennsylvania Workmen's Compensation Act', or 'The Pennsylvania Occupational Disease Act'.*

*Id.* (emphasis added).

The term "service connected disability", appearing in the preceding section and otherwise referenced in the disability provisions, is defined in the Code. Specifically, a "service connected disability" is:

A disability resulting from an injury arising in the course of State employment, *and which is compensable under the applicable provisions of the act of June 2, 1915 (P.L. 736, No. 338), known as 'The Pennsylvania Workmen's Compensation Act', or the act of June 21, 1939 (P.L. 566, No. 284), known as 'The Pennsylvania Occupational Disease Act.'*

71 Pa.C.S. § 5102 (emphasis added).

In addition, the SERB has promulgated a regulation [8] which directly addresses its obligations and limitations regarding a finding of service or non-service connected disability. Found at 4 Pa.Code § 247.4(b), that regulation provides:

**8.** Code section 5902(h), 71 Pa.C.S. § 5902(h), grants the SERB authority to adopt and promulgate rules and regulations for the uniform administration of the system. Once adopted, the SERB is bound to follow such regulations. *Costello v. State Employes' Retirement Board,* 141 Pa.Commonwealth Ct. 19, 596 A.2d 260 (1991).

*(b) Service connected disability annuities.* Eligibility for a service connected disability benefit *shall be determined exclusively under the provisions of the Pennsylvania Workmen's Compensation Act (77 P.S. §§ 1–1023), and the Pennsylvania Occupational Disease Act (77 P.S. §§ 1201–1603),* and other compensation statutes applicable to special classes of Commonwealth employes. A service-connected disability, shall total 70% of the final average salary, and includes within that annuity the benefit amounts awarded by the Social Security Administration and the agency or agencies having jurisdiction over the determination of the applicable State benefits. The benefit shall continue as long as the member is entitled to receive the State compensation benefits. The service-connected disability shall be discontinued if the State compensation authorities determine that the service-connected disability has ceased. In that event, a member shall be eligible for normal disability benefits, as provided in section 5704(a) of the code (relating to member's options) if the Board determines that the member remains disabled. *The service-connected disability benefit shall be payable as of the effective date of the application for disability benefits filed with the Board, irrespective of the date the State compensation award was made.*

*Id.* (emphasis added).

The SERB interprets the language in the previously quoted Code sections and accompanying regulation to require a compensable injury under either the Workmen's Compensation Act or the Occupational Disease Act before the SERB may make a finding of service connected disability. The SERB reasons that a finding of service connected disability as defined in the Code requires that the record show both that the disability (1) resulted from an injury *arising in the course of State employment* [9] **and** (2) is compensable under the Workmen's Compensation Act or Occupational Disease Act. 71 Pa.C.S. § 5102. The SERB contends that although it may

**9.** This first prong is satisfied if, during the course of State employment, the employee becomes mentally or physically incapable of continuing to perform the duties for which he is employed. 71 Pa.C.S. § 5308(c).

review the evidence of record in a particular case to determine whether the first of these conditions is satisfied, the determination of compensability under the Workmen's Compensation or Occupational Disease Act is for the WCAB and not the SERB.[10] This second prong indicates that an annuitant's disability did not merely *arise* in the course of State employment but was *caused by* an injury in the workplace, as

**10.** Relying on the language in 71 Pa.C.S. § 5905(c) that the SERB take into account relevant WCAB decisions in determining eligibility for disability annuities, Daneker argues that we can reverse the SERB's finding that her disability was non-service connected. Daneker cites several cases where psychological stress at a claimant's job was found to have caused either physical or mental disability, entitling that claimant to workmen's compensation benefits. *See Leo v. Workmen's Compensation Appeal Board (Borough of Charleroi),* 114 Pa.Commonwealth Ct. 6, 537 A.2d 399 (1988); *Boeing Vertol Co. v. Workmen's Compensation Appeal Board (Coles),* 107 Pa.Commonwealth Ct. 388, 528 A.2d 1020 (1987), *appeal denied,* 517 Pa. 619, 538 A.2d 501 (1988); *Bevilacqua v. Workmen's Compensation Appeal Board (J. Bevilacqua & Sons, Inc.),* 82 Pa.Commonwealth Ct. 511, 475 A.2d 959 (1984). Based on these cases, Daneker asserts that she has presented sufficient record evidence to meet her burden of proving that her disability resulted from her employment duties and, thus, was service connected.

On the other hand, the SERB claims that the phrase "taking into account relevant decisions by The Pennsylvania Workmen's Compensation Board ..." does not refer to workmen's compensation cases generally but refers instead to decisions regarding the benefit eligibility under the Workmen's Compensation Act for the specific individual who is also applying for a disability retirement allowance under the Code. We disagree with both Daneker and the SERB. In *Moser v. State Retirement Board,* 89 Pa.Commonwealth Ct. 456, 492 A.2d 822 (1985), we dealt briefly with the phrase in dispute here. In *Moser,* we stated that section 5308(c) of the Code provides that if an employee "prior to attainment of superannuation age ... becomes mentally or physically incapable of continuing to perform the duties for which he is employed," he shall "be entitled to a disability annuity." We then went on to say that "Section 5905(c) of the Code requires that, *in making this determination,* the Board must consider relevant decisions of the Workmen's Compensation Appeal Board." *Moser,* 89 Pa.Commonwealth Ct. at 465–66, 492 A.2d at 826–27. In a footnote, we provided an example, a case unconnected with Moser specifically, which supported Moser's entitlement to a disability annuity. Based on *Moser,* we must agree with Daneker that the SERB may consider *any* relevant workmen's compensation case to determine a claimant's eligibility for a disability annuity under the Code. However, we also agree with the SERB that it cannot rely on workmen's compensation cases in general to support a finding that a specific annuitant's disability is service connected; that finding requires a prior award of workmen's compensation benefits specifically to that individual.

determined by the WCAB. Absent evidence of an award by the WCAB, the SERB is constrained to find that the disability is non-service connected; however, if and when the WCAB concludes that a disability annuitant is entitled to compensation under either of these acts, the SERB is then required by statute and regulation to defer to that decision by finding a service connected disability and calculating benefits in accordance with 71 Pa.C.S. § 5704(f).[11]

The SERB next contends that under its statutory interpretation, Daneker's alternative argument must also fail. In that argument, Daneker contended that this court could remand the case to the Board, delaying a decision on the issue of service or non-service connection until after the WCAB had rendered its decision on the compensability of Daneker's workmen's compensation claim. However, the SERB asserts that 71 Pa.C.S. § 5905(c)(1) prohibits the SERB from declining to address the issue of service connection. 71 Pa.C.S. § 5905(c)(1) requires that "in every case where it has received an application for a disability annuity, the SERB shall make a finding of disability *and* whether or not the disability is service connected or nondisability...." In keeping with this language, the SERB contends that in order to grant a disability annuity, it must find an applicant disabled and at the same time, it must determine the service or non-service connected status of that disability.

 An administrative agency has wide discretion in establishing rules, regulations and standards, and also in the performance of its administrative duties and functions. *Wengrzyn v. Cohen*, 92 Pa.Commonwealth Ct. 154, 498 A.2d 61 (1985). Where an agency has not abused its discretion in the exercise of its duties or functions, we must defer to its

11. The SERB strengthens its position here by noting that even if it were to determine that Daneker's disability was service connected, it still could not calculate her benefit as service connected under 71 Pa.C.S. § 5704(f). That section calls for a disability annuitant to receive a supplement equal to 70% of her final average salary less the normal annuity amount as determined under § 5704(a). The calculation also requires an offset by the amount of workmen's compensation paid or payable, an amount which cannot exist without an actual award of workmen's compensation benefits by the WCAB.

expertise and cannot substitute judicial discretion for administrative discretion. *Swartwood v. Department of Environmental Resources,* 56 Pa.Commonwealth Ct. 298, 424 A.2d 993 (1981). In addition, we have consistently recognized that "an administrative agency's interpretation of its own regulations is controlling unless the interpretation is plainly erroneous or inconsistent with either the regulation or the statute under which it is promulgated." *Clark v. Department of Public Welfare,* 118 Pa.Commonwealth Ct. 587, 589, 546 A.2d 1277, 1279 (1988). An examination of the applicable statutes and regulations here clearly indicates that the SERB has not arbitrarily exercised its duties or misinterpreted its role in this case. Accordingly, we hold that the receipt of benefits under the Workmen's Compensation Act or the Occupational Disease Act is a necessary precondition to a finding of service connected disability under the Code and the regulations promulgated thereunder.

Daneker sought appeal here because she fears that the SERB's finding of a non-service connected disability will preclude her from prevailing in her case before the WCAB. We understand Daneker's concern and, for the sake of future pensioners who may be subjected to the uncertainty created by such "findings" and "conclusions", we suggest that the SERB reform its loose language. Rather than "find" that an annuitant's disability is non-service connected, the SERB should find or conclude what it really means; that the disability is treated as non-service connected unless and until the WCAB adjudicates that it was incurred in the course of employment. In this case, the SERB's finding that Daneker's disability is non-service connected should not adversely impact upon her subsequent claim for workmen's compensation. In fact, the SERB itself expressly asserts that in making this finding, it did not and could not conduct an analysis to determine whether Daneker's injury was causally related to her employment and, therefore, compensable under the Workmen's Compensation Act.[12] Rather, a SERB finding of service

12. We do not determine whether a SERB grant or denial of a disability retirement annuity can impact upon a WCAB decision with regard to

connected disability depends solely upon the WCAB's award of benefits. Therefore, in the context of disability retirement annuities under the Code, this finding does nothing more than reflect the fact that the WCAB has not as yet rendered a decision with regard to compensability of the annuitant's disability under the Workmen's Compensation Act.[13] All the SERB has determined is that Daneker is mentally or physically incapable of continuing to work at White Haven, without any adjudication regarding the cause of her incapacity. Indeed, the SERB concedes that the record here may indicate

issues other than causation. However, we note that arguments against the applicability of res judicata and collateral estoppel to a workmen's compensation claim, are properly put before the WCAB, if and when those defenses are raised.

13. In this sense, we can distinguish this case from our decision in *Harrington v. Workmen's Compensation Appeal Board*, 15 Pa.Commonwealth Ct. 119, 325 A.2d 337 (1974). In *Harrington*, a Philadelphia Fire Department employee was injured while driving home from work and filed a claim for compensation under Regulation 32 of the Philadelphia Civil Service Commission which provided compensation for injuries "caused by accident ... which is service connected." Ultimately, we held that because the injuries were not sustained within the scope of employment, they were not service connected as required by Regulation 32. The claimant subsequently filed a claim for workmen's compensation in an action arising out of the same injuries and the referee awarded benefits, concluding that the claimant was injured in the course of his employment. The WCAB reversed based on either res judicata or collateral estoppel. We affirmed the WCAB. Although ruling that res judicata did not bar the workmen's compensation claim, we determined that collateral estoppel precluded reconsideration of the question of whether claimant was in the course of his employment because *that issue had already been advanced and litigated in the Regulation 32 case.*

Unlike the situation in *Harrington*, decided in connection with Regulation 32, eligibility for benefits under the Code is not dependent upon a finding that the disability is service connected; in fact, the SERB determined that Daneker was entitled to benefits although it specifically found that her disability was non-service connected. Moreover, according to the SERB's own interpretation of the Code and its accompanying regulations, the SERB cannot, under any set of facts, find that an annuitant's disability is service connected without a prior award of workmen's compensation benefits, at which point the SERB must make that finding. Therefore, although the SERB found that Daneker's disability was non-service connected, that finding only represents the absence of an award by the WCAB; it does not evidence prior litigation on that issue nor does it decide the question of the work-related nature of Daneker's disability which is necessary for a determination of compensability under the Workmen's Compensation Act.

that Daneker's illness was causally related to her employment, entitling her to Workmen's Compensation benefits; however, the SERB stresses that the WCAB must make this ultimate determination. At such time as a Workmen's Compensation benefit is awarded and Daneker notifies the SERB of that award, the SERB will automatically adjust Daneker's disability annuity to reflect that award.

We thus affirm the order of the SERB granting Daneker a non-permanent, non-service connected disability retirement annuity.

### ORDER

AND NOW, this 30th day of June, 1993, the order of the State Employes' Retirement Board, dated December 3, 1991, is affirmed.