**Ronald G. SHAFER, Petitioner,**

v.

**STATE EMPLOYES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 1995.

Decided Nov. 30, 1995.

**1210**

Elliot A. Strokoff, for petitioner.

Kathleen E. Boyle, for respondent.

Before SMITH and KELLEY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Ronald G. Shafer (Shafer) petitions for review of an order of the State Employes' Retirement Board (Board) denying Shafer's request to purchase non-state service credit for the 1978–79 academic year that he spent as a Fulbright Scholar lecturing on American Literature at Ain Shams University in Cairo, Egypt. We reverse and remand.

Shafer was a professor of English at Indiana University of Pennsylvania (IUP) beginning in 1970, at which time he first became a member of the State Employes' Retirement System (SERS). In 1978, Shafer was selected to be a senior Fulbright lecturer, a position which he accepted and filled during the 1978–79 school year.

In 1981, Shafer made a request to SERS to purchase non-state service credit for his Fulbright year. By letter dated September 5, 1991, SERS responded.[1] Shafer was eventually notified by letter, dated January 30, 1992, that pursuant to the State Employes' Retirement Code, 71 Pa.C.S. §§ 5101–5956 (Retirement Code), he was determined to be ineligible to purchase retirement credit. Shafer appealed and, following an administrative hearing, the hearing examiner recommended that the Board approve Shafer's request. SERS filed exceptions and the Board, after review, denied the request. The present appeal followed.[2]

Before addressing the issues raised, we set forth an explanation of the approval process and other indicia connected with Shafer's Fulbright year as found by the Board. Following the filing of the application, the approval process was begun. It required review and recommendation by the Council for International Exchange of Scholars, the American Embassy in Cairo, the English Department and administration of Ain Shams University and the Board of Foreign Scholarships (now known as the J. William Fulbright Foreign Scholarship Board). When Shafer was notified of his acceptance he received a grant authorization notice that included a document entitled "Terms and Conditions of Fulbright–Hays Grant" which indicated that "a person accepting such a grant is not by virtue thereof an official or employee of the International Communication Agency or other agency of the government of the United States of America, or of an agency of the government of the host country." (Board's Decision, p. 3.)

IUP granted Shafer unpaid leave of absence to accept the federally funded grant. The award included a one day orientation in Washington, D.C., health and accident insurance through the International Communications Agency (now the United States Information Agency), and a stipend of $1,870.00 per month payable in advance to Shafer by the American Embassy to cover living expenses for Shafer and his family. The Embassy also provided housing for Shafer and his family.

The Board also found that Shafer received a 1099 form for the grant award, did not take a civil service test, did not receive a "GS" rating, did not contribute to the federal civil service retirement system or accumulate federal annual leave or sick leave. As for Shafer's actual duties during his period in Cairo, he reported to and was monitored by Dr. Kamel Metwalli, the head of the University English Department. Shafer's courses, his syllabus and his text books were approved by the University, which also supervised testing

---

1. No explanation was provided to explain SERS' ten year delay in responding to Shafer's application except that in the *September 5, 1991* letter SERS apologized and indicated it was awaiting additional information.

2. Our scope of review of an administrative board's final adjudication is limited to determining whether the adjudication is in accordance with law, whether constitutional rights were violated and whether the necessary findings of fact are supported by substantial evidence. *Daneker v. State Employes' Retirement Board*, 156 Pa. Cmwlth. 511, 628 A.2d 491 (1993).

and grading practices. Shafer made monthly reports and met weekly with Dr. Blanning, Executive Director of the Commission for Educational and Cultural Exchange between the United States and Egypt. Dr. Blanning did not control the content of the curriculum that Shafer taught, but Shafer could not accept other compensatory employment without approval of the United States Foreign Service Post. He could be reassigned by the International Communications Agency and was expected to perform other duties during extended recess or vacation periods. If Shafer failed to comply with the terms of the grant he could be required to repay his grant monies.

With the above factual information in mind, we now address the following issues raised by Shafer in his appeal: whether a member of SERS must establish that he is an employee of an agency or department of the United States government in order to purchase non-state credit pursuant to Section 5304(c)(3) of the Retirement Code. In essence, the question centers on whether an employer/employee relationship must be established.

Section 5304(c)(3) of the Retirement Code allows for the purchase of creditable non-state service credit for:

> (3) service in any public school or public educational institution in any state other than this Commonwealth or in any territory or area under the jurisdiction of the United States; or service as an administrator, teacher, or instructor, in the field of education for any agency or department of the government of the United States, whether or not such area was under the jurisdiction of the United States.... [3]

Shafer argues that the language of Section 5304(c)(3) does not require an employment relationship. He cites a Board decision, *In re Claim of Philip D. Smith, Jr.*, Docket No. 1987–1, issued on February 17, 1995, six weeks after the Board's decision in the present case. In *Smith*, an SERS member was allowed to purchase 60% of his time spent while employed by the Nevada Department of Education as a foreign language consul-

tant. Smith's purchase was permitted because he spent 60% of his time in the public schools of Nevada observing, consulting and training foreign language teachers, yet he was employed by the Nevada Department of Education and not by the public educational institution.

In addition, Shafer also relies on *Kapilian v. State Employes' Retirement System*, 144 Pa.Cmwlth. 80, 600 A.2d 698 (1991), *petition for allowance of appeal denied*, 530 Pa. 656, 608 A.2d 31 (1992). In *Kapilian*, the Board disallowed the purchase of non-state service credit because Kapilian was a student and the services he provided were incidental to this status; thus, the Board held that Kapilian was not an employee as it contended was required by Section 5304(c)(3). However, on appeal the *Kapilian* court stated that "[t]he fact that Kapilian *provided service in a public education institution* in another state is all that is necessary for eligibility to purchase nonstate service credit." *Id.*, 600 A.2d at 700 (emphasis added) (footnote omitted). The *Kapilian* court also pointed out that credible non-state service is not broader in scope than credible in-state service. Thus, despite the fact that Kapilian's service was incidental to his status as a student, he could purchase the proportional amount of credited service that he could have received if the service had been in Pennsylvania. Even though the issue raised in *Kapilian* was whether or not Kapilian was an employee, regardless whether full time or part-time, the court specifically stated that "service in a public education institution ... is all that is necessary for eligibility to purchase nonstate service credit." *Id.* at 700.

The Board responds to Shafer's argument that *Kapilian* did not directly address the issue of whether the term "service" should be equated with employment but contends that it is implicitly acknowledged by the *Kapilian* court in its opinion. The Board bases this assertion on the court's discussion of Section 5302(a) of the Retirement Code, which limits service credit for part-time employment and discusses credit for members who are em-

---

**3.** Although the Retirement Code was amended in 1991, the parties agree that this quoted portion of the pre–1991 version of the law applies to this case.

ployed and make contributions for less than 220 days. However, this portion of the *Kapilian* opinion concerns the part-time nature of the petitioner's service and in no way supports a conclusion, tacitly or otherwise, that an employment relationship is required.

The Board also points out that *Kapilian* is not exactly on point because the first portion of Section 5304(c)(3) was interpreted by the court there and here the second portion is at issue. Notwithstanding this distinction, the controversy is about the definition of service and whether that term equates with employment. The difference between the two portions of Section 5304(c)(3) rests on where and for whom service was performed.

The Board also attempts to distinguish its own *Smith* case, which it concedes contains some "unfortunate and perhaps not fully-considered language with respect to *Kapilian*." (Board's Brief, p. 24.) The Board then states that this is of no real moment here. We disagree.

Although we are not compelled to follow the Board's *Smith* opinion, it is evident that the Board in *Smith,* when it interpreted *Kapilian,* did not equate the term service with the term employment. Clearly, the Board in *Smith* recognized an employment relationship between Smith and the Nevada Department of Education, but allowed Smith's service in the public schools and in public educational institutions to be used as a basis for his purchase of retirement credit, focusing on the *Kapilian* court's statement that the examination should focus on the concept of service rather than the existence or non-existence of an employment relationship.

The Board issued two decisions within a six week period both which examined the same the question, i.e., whether an employer/employee relationship must be established between the petitioner and the entity for which the petitioner is providing service as a requirement before a petitioner can be entitled to non-state retirement credit. In the present case, decided on January 4, 1995, the Board held that because no employment relationship existed, credit could not be pur-

chased; in the *Smith* case, decided on February 17, 1995, the Board held that an employer/employee relationship was not necessary and that the portion of the service to the Department of Education in Nevada, performed in public educational institutions, allowed the purchase of credit.

Because an administrative agency's interpretation must be consistent with the underlying policies or objectives of the underlying statute, *Segal v. Department of Public Welfare,* 145 Pa.Cmwlth. 385, 603 A.2d 668 (1992), *petition for allowance of appeal denied,* 531 Pa. 658, 613 A.2d 563 (1992), a problem exists when the outcome of two separate cases, interpreting the same section of the statute, yield inconsistent results. Moreover, the Board had the *Kapilian* opinion at its disposal at the time it rendered both decisions. The Board cannot apply the rationale in *Kapilian* in one instance and not apply it in the other.

 We conclude that *Kapilian* controls the decision here; therefore, the Board's denial of Shafer's request for non-state retirement credit must be reversed. The *Kapilian* court's interpretation of Section 5304(c)(3) of the Retirement Code does not require that an employment relationship must exist between the petitioner and the school entity or, as in this case, the United States government or one of its agencies. Service as an administrator, teacher or instructor is paramount.[4]

Accordingly, we reverse and remand the case to the Board for computation of the amount of non-state service credit which Shafer is eligible to purchase.

### ORDER

NOW, November 30, 1995, the order of the State Employes' Retirement Board, dated January 4, 1995, at No. 1992–15, is reversed and the case is remanded to the State Employes' Retirement Board for computation of the amount of non-state service credit which Shafer is eligible to purchase.

Jurisdiction relinquished.

---

4. Extensive portions of both parties' briefs discuss the indicia required to prove whether an employer/employee relationship exists. However, because we hold that this type of relationship is not required pursuant to *Kapilian,* we need not discuss these arguments.

**KELLEY, Judge, dissenting.**

I respectfully dissent.

The majority correctly notes that the question in this case centers on whether Shafer must establish that he was an employee of an agency or department of the United States government in order to purchase the nonstate credit under section 5304(c)(3) of the State Employees' Retirement Code (Code), 71 Pa.C.S. § 5304(c)(3). The majority also correctly concludes that the disposition of this case is controlled by our opinion in *Kapilian v. State Employes' Retirement System*, 144 Pa.Cmwlth. 80, 600 A.2d 698 (1991). However, my reading of the Code and *Kapilian* compels a different result.

Prior to the 1991 amendments,[1] section 5304 of the Code provided, in pertinent part:

(a) **Eligibility.**—An active member or a multiple service member who is a school employee and an active member of the Public School Employees' Retirement System shall be eligible for Class A service credit for creditable nonstate service as set forth in subsection [ (c) ]. . . .

. . . .

(c) **Limitations on nonstate service.**— Creditable nonstate service credit shall be limited to:

. . . .

(3) service in any public school or public educational institution in any state other than this Commonwealth or in any territory or area under the jurisdiction of the United States; or service as an administrator, teacher, or instructor in the field of education for any agency or department of the government of the United States, whether or not such area was under the jurisdiction of the United States. . . .

In *Kapilian*, the board did not permit Kapilian's purchase of nonstate service credit under section 5304(c)(3), for service he rendered as a graduate assistant at the University of Illinois. *Kapilian*, 600 A.2d at 699. In so doing, the board had concluded that Kapilian was not an "employee" at the time of the service because he was a student and the services he provided were incidental to his status as a student. *Id.* On appeal to this court, Kapilian claimed that the Code did not impose limitations on the type of service or require full-time employment status in order to qualify for the purchase of nonstate service credit under section 5304(c)(3). *Id.*

In reversing the board's decision, we held that the pre-amendment Code made no distinction regarding employees whose employment was contingent upon their status as students. *Id.* at 700. We found that the pre-amendment Code only required that Kapilian provide service in a public education institution in another state in order to be eligible to purchase nonstate service credit. *Id.* Therefore, we concluded that "[s]ection 5304(c)(3) gives Kapilian the right to purchase nonstate service credit for his employment at [the University of Illinois]." *Id.*

In that case, Kapilian's aggregate workload as a graduate assistant only amounted to 75% of a full load. *Id.* Finding that he was entitled to purchase nonstate service credit, we noted that there was no statutory basis for concluding that creditable nonstate service is broader in scope than creditable instate service. *Id.* Therefore, we stated that "[w]e must determine whether any limitations on credit would be imposed upon an employee in Kapilian's employment situation if his services had been provided in Pennsylvania." *Id.* We concluded that he would only have been credited with a fractional portion of his time served if the services had been provided in Pennsylvania. *Id.* As a result, we stated that:

we cannot interpret [section 5304(c)(3) ] so broadly that nonstate service would entitle an employee to more benefits or privileges than instate service. Therefore, because a Pennsylvania employee with Kapilian's circumstances would be eligible for only a proportional amount of credited service, Kapilian is entitled to purchase only a like proportional amount.

*Id.*

In reversing the decision of the board in the present case, the majority concludes that:

---

1. Both parties agree that the pre-amendment Code applies in this case.

[t]he Kapilian court's interpretation of Section 5304(c)(3) of the Retirement Code does not require that an employment relationship must exist between the petitioner and the school entity or, as in this case, the United States government or one of its agencies. Service as an administrator, teacher or instructor is paramount.

At 1212.

I must disagree. The fact that Kapilian was employed by the University of Illinois on a part-time basis was a critical factor in our disposition of that case. *Kapilian,* 600 A.2d at 700. Our decision in *Kapilian* simply cannot be read to mean that an employment relationship need not exist before nonstate service can be credited under section 5304(c)(3) of the Code. Rather, I believe that both *Kapilian* and the Code require an employment relationship in order for a party to receive nonstate service credit under section 5304(c)(3).

In the instant case, the board made the following relevant findings of fact:

7. By letter dated July 28, 1978, [Shafer] was notified by the [United States] International Communication Agency that he had been selected to receive a Fulbright–Hays grant under the [Mutual Educational and Cultural Exchange Act of 1961, 22 U.S.C. §§ 2451–2460] to lecture in American Literature at Ain Shams University [in Cairo, Egypt].

8. Enclosed with the July 28, 1978 letter, among other documents, was a document entitled "International Communication Agency; United States Government Grant Authorization" ("Grant Authorization"). The Grant Authorization incorporated by reference a separate document entitled "Terms and Conditions of Fulbright–Hays Grant" ("Terms and Conditions").

9. The Grant Authorization indicated on its face:

'A person accepting such a grant is not by virtue thereof an official or employee of the International Communication Agency or other agency of the Government of the United States of America, or of an agency of the Government of the host country.'

10. When [Shafer] accepted the grant, he signed a statement on the "Terms and Conditions" document which stated "I accept the award and agree to abide by the conditions of the grant as specified in the attached 'Terms and Conditions of Award.'"

Board Opinion at 2–3.

In its decision, the board noted that the way in which the parties designate their relationship in a contract is not necessarily controlling, but it is a factor appropriately considered in determining whether an employer-employee relationship exists, citing *Zimmerman v. Public School Employees' Retirement Board,* 513 Pa. 560, 522 A.2d 43 (1987). Board Opinion at 21. The board also noted that a signed contract is presumed to express the intent of its signatories, citing *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986). *Id.* Relying on the Grant Authorization and other facts of record, the board concluded that Shafer had failed to meet his burden of proof that he was an employee of the federal government so as to be able to purchase nonstate credit under section 5304(c)(3). Board Opinion at 26–27.

On appeal, this court's scope of review is to determine whether constitutional rights were violated, an error of law was committed or necessary findings of fact are not supported by substantial evidence. *Estate of McGovern.* Because none of the foregoing are present in this case, I would affirm the decision of the board regarding Shafer's eligibility to purchase nonstate service credit under section 5304(c)(3).