**William R. GOWDEN, Petitioner**

v.

**STATE EMPLOYEES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 7, 2004.

Decided June 10, 2005.

Anthony M. Caputo, Harrisburg, for petitioner.

M. Catherine Nolan, Asst. Counsel, Harrisburg, for respondent.

BEFORE: FRIEDMAN, J., and LEADBETTER, J., and FLAHERTY, Senior Judge.

OPINION BY Judge LEADBETTER.

This case raises an issue of first impression concerning the interplay between two statutory provisions, one in the State Employees' Retirement Code (Retirement Code),[1] and the other in the Worker's Compensation Act (Act).[2] Claimant William R. Gowden petitions for review of an order of the State Employees' Retirement Board (Board) denying his request that the State Employees' Retirement System (SERS) provide him with a service-connected supplemental disability benefit, pursuant to Section 5704(f) of the Code. Because we believe that the Board has misconstrued these statutes, we reverse.

Section 5704(f) of the Code provides:

(f) Supplement for service connected disability.—If a member has been found to be eligible for a disability annuity and if the disability has been found to be a service connected disability and if the member is receiving workers' compensation payments for other than medical benefits, such member shall receive a supplement equal to 70% of his final average salary less the sum of the annuity as determined under subsection (a) [providing for calculation of amount of annuity] and any payments paid or payable on account of such disability under the ... Workers' Compensation Act, ... The Pennsylvania Occupational Disease Act, and the Social Security Act ...

71 Pa.C.S. § 5704(f). Section 204(a) of the Workers' Compensation Act (Act), provides, in pertinent part:

The severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c).

Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 71(a).

Gowden was employed with the Commonwealth of Pennsylvania, Office of Attorney General (OAG), when he sustained a work-related injury in 1999 and began receiving workers' compensation wage loss benefits. Due to his injury, Gowden retired and was granted a disability pension annuity. At the time he began collecting his retirement annuity, Gowden's final average salary was $53,247.77. Seventy percent (70%) of Gowden's final average salary is $37,273.44, or $3,106.12 per month. When he retired, Gowden was entitled to a maximum disability annuity of $953.26 per month and he was receiving workers' compensation benefits in an amount equal to $2,555.84 per month. The sum of Gowden's maximum disability annuity and workers' compensation wage loss benefits was $3,509.10 per month at the time of his retirement, which was more than 70% of his final average salary.

In accordance with Section 204(a) of the Act, the Commonwealth began offsetting Gowden's workers' compensation benefits by the employer-funded portion of his disability pension annuity. Gowden did not contest the calculation methodology. As a result of the offset, the sum of Gowden's benefits changed so that they were less than 70% of his final average salary. Gow-

---

1. 71 Pa.C.S. § 5704(f).

2. 77 Pa.C.S. § 71(a).

den then requested that SERS recalculate his retirement benefit and pay the supplement provided for in Section 5704(f) of the Retirement Code. SERS denied Gowden's request for a supplement, as did the SERS Appeals Committee.

On November 21, 2002, a hearing on Gowden's entitlement to a supplemental disability benefit was held before a hearing examiner. The hearing examiner recommended that Gowden's request be denied. According to the hearing examiner, allowing a recalculation of benefits after the offset would place the Retirement Code and the Act in disharmony and would lead to an "absurd" result. The hearing examiner opined that allowing the recalculation would increase the offset provided for in the Act, permitting future offsets and disability supplement increases until the entire workers' compensation benefit would be paid by the disability supplement. The hearing examiner further opined that allowing such a recalculation would deprive the Commonwealth of the benefit of Section 204(a) of the Act, which prevents double funding of benefits.

The Board adopted the hearing examiner's opinion, concluding that SERS had properly calculated Gowden's supplement based upon the workers' compensation benefits he was receiving when he retired and not after his workers' compensation benefits had been reduced under Section 204(a) of the Act. Accordingly, the Board

denied Gowden's claim. Gowden now petitions this court for review of the Board's determination that he is not entitled to a disability pension supplement pursuant to Section 5704(f) of the Retirement Code.

 The relevant facts in this case are not in dispute. The evidence demonstrates, and the parties agree, that Gowden is entitled to—and received—disability annuity payments from SERS and workers' compensation wage loss benefits. The parties have also agreed that the Commonwealth is entitled to an offset for the employer-funded portion of the disability benefit,[3] and that before the offset, Gowden's benefits exceeded 70% of his final average salary, but after the offset, they do not. The issue, then, is one of statutory construction, *i.e.,* whether Gowden is entitled to the supplemental benefit, now that the offset has caused the sum of Gowden's disability annuity payments and workers' compensation wage loss benefits to drop below 70% of his final average salary.[4]

Gowden asserts that he is entitled to a disability pension supplement based upon the plain language of the Retirement Code, because after the offset was taken, his total benefits amounted to less than 70% of his final average salary. Gowden's position is that his interpretation is consistent with both the Workers' Compensation Act and the Retirement Code, each of which should be liberally construed in favor of the claimant.

3. The Board explains that SERS' benefits are funded by three sources: (1) employee contributions; (2) employer contributions; and (3) investment returns on the employer and employee contributions. To determine the employer-funded portion of Gowden's benefits, SERS reduced the present value of his account by the value of his member contributions plus deemed investment returns. The OAG then received a credit for the retirement benefit associated with the remaining present value (which was entirely employer-funded).

4. As this is a question of law, this court exercises plenary review, although we note that, "as an agency charged with execution and application of the retirement statute, the Board is entitled to considerable deference in its construction of the Retirement Code and the regulations promulgated thereunder; therefore, the Board's construction may not be overturned unless it is clearly erroneous." *McCormack v. State Employees' Ret. Bd.,* 844 A.2d 619, 622 n. 2 (Pa.Cmwlth.2004) (citation omitted).

The Board asserts that it correctly calculated Gowden's entitlement to the supplement based upon the workers' compensation wage loss benefit that he was receiving at the time of retirement, because the plain language of the Retirement Code does not provide for a recalculation of Gowden's benefits after the offset has been taken. The Board points out that twenty-two years after passing Section 5704(f) of the Code, the General Assembly amended Section 204(a) of the Act to permit the employer credit, but did not amend Section 5704(f) to address adjustment of a supplement after the employer credit is taken. According to the Board, it must be presumed that the legislature intended that only the initial workers' compensation benefit be used to calculate a supplement. We do not find this argument compelling. While amending Section 5704(f) might have clarified the issue, lack of an amendment does not suggest one way or another whether the supplement was intended to be based on pre- or post-offset benefits. It merely suggests that the General Assembly did not believe the issue was so obscure as to require clarification. Left unamended, the provision simply continues to provide, without qualification, for a supplement to bring the total of benefits up to 70% of the annuitant's final average salary.

In addition, the Board echoes the hearing examiner's analysis, arguing that recalculating Gowden's supplement would produce a result that is absurd and not intended by the General Assembly. According to the Board, if Gowden received a supplement after the offset, he would not be required to pay additional contributions, and his supplement would be funded entirely by his employer. Section 204(a) of the Act would then allow the OAG to take an additional credit, prompting additional supplements in a never-ending cycle until eventually the entire liability for the workers' compensation benefit would be carried by SERS.[5] The Board then points out that at that time, Gowden would no longer be "receiving workers' compensation payments for other than medical benefits ..." which is a prerequisite to obtaining a supplement under Section 5704(f).

We agree with the Board that such a result would be absurd and not that intended by the General Assembly. The flaw in the Board's argument, however, is that while a literal and open-ended reading of *both* statutes may have the potential to create such an effect, the Board's interpretation is not the only one which avoids such a problem. No one other than the Board, which seems to have posited this interpretation for the purpose of discrediting it, suggests a construction by which each provision is perpetually readjusted in reaction to the other. The salient question, rather, is whether Section 5704(f) of the Retirement Code should be interpreted to disregard any offsets encountered as a result of the workers' compensation provision, as the Board suggests, or whether to construe the workers' compensation provision to disregard any supplements paid under Section 5704(f). Under the first scenario the supplement would be

---

5. Although it is impossible to tell from the record, this argument may be based upon inaccurate facts. Counsel for the Board stated at oral argument that SERS pays the supplement provided for in Section 5704(f) of the Retirement Code, not Gowden's employer, OAG, and further that SERS will not seek reimbursement for the supplement from the OAG. If this is correct, no further offsets would be allowed because the supplements would not be employer funded. Indeed, if this is correct, the entire issue raised here is illusory because no SERS-paid supplement would be employer funded and thus no offset would be allowed on the basis of that portion of the annuity.

calculated as SERS did here, so that after the workers' compensation offset is taken, annuitants in Gowden's situation would be left with less than 70% of their final average salaries. Under the second scenario, a supplement would be calculated after the initial offset to bring the total benefit package to the 70% level, but that supplement would not provide the basis for a further offset.[6]

The object of statutory interpretation is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). The rules of statutory construction require that statutes be construed to give effect to all of their provisions, if possible. 1 Pa.C.S. § 1921(a); *Shafer v. State Employes' Ret. Bd.*, 548 Pa. 320, 696 A.2d 1186 (1997). The obvious purpose of Section 5704(f) is to assure that those forced to retire as a result of a service connected disability should receive no less than 70% of their final average salary, while the purpose of Section 204(a) is to eliminate duplicative payment of benefits (for both workers' compensation and disability retirement) by employers, such that they are required to pay no more than their statutory obligations. Clearly, while the Board's view would serve the purpose of Section 204(a), it would frustrate the purpose of Section 5704(f). If SERS supplements are calculated without regard to the offsets employers are entitled to deduct from workers' compensation payments, some annuitants, like Gowden, would end up with a total benefit less than 70% of their final average salaries. On the other hand, we believe calculating the Section 204(a) offsets without regard to any supplements paid under Section 5704(f) will be consistent with the purposes of both statutes because annuitants will re-ceive exactly the 70% of past salary to which they are entitled, and to the extent employers fund retirement benefits which bring the annuities to this level, they would pay no more than their statutory obligations.

Accordingly, the order of the State Employees' Retirement Board is reversed.

### ORDER

AND NOW, this 10th day of June, 2005, the order of the State Employees' Retirement Board in the above captioned matter is hereby REVERSED and REMANDED for the purpose of recalculating benefits in accordance with the foregoing opinion.

Jurisdiction is relinquished.

---

**6.** Of course, based on their salaries and their years in state service, some annuitants would be entitled to a supplement even before an offset was taken, while others would not be entitled to a supplement at all. Although the calculations would vary with the circumstances of individual annuitants, the underlying analysis here would not change.