**J. Robert CHUK, Petitioner**

v.

**STATE EMPLOYEES' RETIREMENT SYSTEM, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 2005.

Decided Oct. 24, 2005.

Thomas W. Scott, Harrisburg, for petitioner.

Nicholas Joseph Marcucci, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, PELLEGRINI, Judge (P), and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

J. Robert Chuk, District Court Administrator for York County, petitions for review of an adjudication of the Pennsylvania State Employees' Retirement Board (Board) that denied his request to convert fourteen years of service with Delaware County to state service for purposes of his retirement pension. The Board did so because it construed the operative statute to limit the transfer of service to one pension plan, i.e., the county where a court administrator was employed on the date he became a state employee. Accordingly, Mr. Chuk was permitted to transfer his five years of service in the York County pension plan, but not his prior service in the Delaware County pension plan.

## BACKGROUND

This controversy centers on the Act of June 22, 1999, P.L. 75, 42 Pa.C.S. § 1905 (Act 1999–12), which was enacted to advance the unified judicial system established in 1968 by the addition of Article V, Section 1 to the Pennsylvania Constitution.[1] Seventeen years later, Allegheny County filed an action in this Court seeking a declaratory judgment that funding of the unified judicial system was a state, not a county, responsibility. This Court de-

nied the declaratory relief, but the Supreme Court reversed. *Allegheny County v. Commonwealth,* 517 Pa. 65, 534 A.2d 760 (1987) (*Allegheny I*). It held unconstitutional various statutes that required counties to fund the operation of the courts of common pleas. However, the enforcement of the Supreme Court's judgment was stayed in order to give the General Assembly an opportunity to develop appropriate funding legislation; this stay left in place the system of county funding.

The General Assembly took no action until a second case was filed by county commissioners to compel the implementation of *Allegheny I. Pennsylvania State Association of County Commissioners v. Commonwealth of Pennsylvania,* 545 Pa. 324, 681 A.2d 699 (1996). The Supreme Court granted the relief but in doing so acknowledged that *Allegheny I* had provided inadequate direction on its implementation; accordingly, the Supreme Court appointed former Justice Frank J. Montemuro, Jr. as its Master to report to the Court on matters of implementation. Members of the legislature established a working group to confer with the Master on making recommendations for the transition to state funding, which resulted in *The Interim Report of the Master.*[2] This report recommended a phased transition for moving county employees of the court system to state employment.

Thereafter, the General Assembly enacted Act 1999–12, which addressed the transfer of one category of employees: court administrators.[3] By amending sev-

---

1. This Constitutional provision states:
   The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace.
   Pa. Const. Art. V, § 1.

2. There is no record that this report was finalized or accepted by order of the Pennsylvania Supreme Court, but it was docketed on July 30, 1997.

3. Phase I in the *Master's Interim Report* related to moving court administrators to state employment.

eral existing statutes, Act 1999–12 transferred county court administrators to state employment, making them members of the State Employees' Retirement System (SERS). In addition, the act gave transferred employees the option to transfer their accounts in the county's retirement plan to SERS by filing a written election with SERS within 90 days of becoming a state employee. The effective date of this transfer to state employment was to be a date of the Pennsylvania Supreme Court's choosing.

The date chosen by the Pennsylvania Supreme Court was January 1, 2000, and on that date, Chuk became a state employee compensated through the Administrative Office of Pennsylvania Courts. On January 4, 2000, Mr. Chuk filed an election to convert his county retirement credit to SERS, which included both his 14 years of service with Delaware County and his 5 years of service with York County.[4] SERS accepted Chuk's election to convert his York County service, and, in accordance with Act 1999–12, billed York County pension system on behalf of Chuk in the amount of $26,391. SERS refused to accept Chuk's election to convert his Delaware County service because that service had not been credited to York County as of January 1, 2000. When he became an employee of York County, Chuk was not permitted to purchase service credits with the York pension system for the time he worked in Delaware County. Accordingly, Chuk's Delaware County service, and his retirement fund balance, remained in the Delaware County pension plan. Chuk appealed to the Board.

The Board appointed a Hearing Examiner to conduct a hearing.[5] In addition to the above-recited background, the hearing established the terms of Chuk's vested retirement account with the Delaware County pension plan. As of February 27, 2002, his account had a value of approximately $47,782.79. These funds will continue to accrue interest until Chuk attains age 60, the superannuation retirement age in the Delaware County pension system. At age 60, Chuk will be entitled to a monthly pension from the Delaware County plan, the amount of which will depend upon the payment he selects and whether he withdraws his own contributions.

The single legal issue at the hearing was the meaning of Act 1999–12's amendment to the State Employees' Retirement Code at 71 Pa.C.S. § 5303.1.[6] The Hearing Examiner concluded Section 5303.1 limited Chuk's right of conversion to that pension plan in which he was a contributor "immediately prior" to his becoming a State em-

---

**4.** Chuk filed the requisite form entitled "Act 1999–12 Election to Convert County Retirement Credits with the State Employees' Retirement System." Reproduced Record at 96a (R.R.——). The dates on that form reflect that, at the time of filing, Chuk had 14 years, 4 months and 23 days of service credit in the Delaware County pension system and 5 years, 3 months and 19 days of service with the York County pension system. He served Delaware County from May 15, 1980 to September 12, 1994. He served York County from September 12, 1994, through December 31, 1999. Mr. Chuk served in a variety of positions in the Delaware County court administrator's office before becoming District Court Administrator for York County.

**5.** By letters dated February 28, 2001, SERS notified counsel for Delaware and York Counties of the filing of the administrative appeal, and that SERS would be seeking financial contributions from either county pension plan pursuant to Act 1999–12, and further advising that the pension plans may have rights being litigated that would entitle them to intervene pursuant to 1 Pa.Code §§ 35.27–35.32. Neither York County or its pension plan, nor Delaware County or its pension plan filed a notice of intervention.

**6.** The text of 71 Pa.C.S. § 5303.1(a) and (d) is found on p. 6, *infra*.

ployee on January 1, 2000, *i.e.,* the York County Plan. The Delaware County time would have been eligible for transfer if York County had credited his Delaware County service time to the York County pension plan, but it did not. The Hearing Examiner recommended that Chuk's appeal be denied.

■ Chuk filed several exceptions to the Hearing Examiner's opinion, and the Board granted one. It agreed with Chuk's legal argument that the County Pension Law[7] and the Retirement Code are *in pari materia*[8] and, accordingly, definitions that appeared in either statute could be used in the other. This grant of this exception, however, did not affect the outcome. The Board adopted the Hearing Examiner's findings of fact, conclusions of law and recommendation; accordingly, it denied Chuk's request that his Delaware County service credits be converted to State service. Chuk then petitioned for this Court's review.[9]

On appeal, Chuk asserts that the Board erred in its interpretation of Section 5303.1 of the State Employees' Retirement Code, 71 Pa.C.S. § 5303.1. Chuk argues that Section 5303.1 must be read to allow conversion of all county service; this result, he argues, is also required by sound public policy.

7. Act of August 31, 1971, P.L. 398, *as amended,* 16 P.S. §§ 11651–11682.

8. Section 1932 provides as follows:
   (a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.
   (b) Statutes in pari materia shall be construed together, if possible, as one statute.
   1 Pa.C.S. § 1932.

9. On appeal from a final adjudication of an administrative board, this Court's scope of review is limited to a determination of whether the board committed an error of law,

**71 Pa.C.S. § 5303.1**

■ The sole issue in this appeal is whether Section 5303.1 was intended to allow court administrators to transfer all of their service accumulated in one or more county pension plans to SERS when they became state employees. The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly. *Markle v. Workmen's Compensation Appeal Board (Caterpillar Tractor Co.),* 541 Pa. 148, 661 A.2d 1355 (1995).[10] Accordingly, we begin with the language of Section 5303.1, which states, in relevant part, as follows:

(a) **General rule.**—County employees who are transferred to State employment pursuant to 42 Pa.C.S. § 1905 (relating to county-level court administrators) *may elect to convert their county service in the retirement system or pension plan in which they were contributors immediately prior to the transfer to State employment.*

\* \* \*

(d) **Effect of election.**—An election to convert county service to State service shall convert all county service in the retirement system or pension plan in which the transferred employee was a member immediately before the transfer to State employment, even if not per-

whether there has been a violation of constitutional rights, or whether necessary factual findings are supported by substantial evidence. *Simmonds v. State Employees' Retirement System,* 548 Pa. 219, 696 A.2d 801 (1997).

10. When the language of a statute is explicit, the Court must follow the plain language of the statute and avoid resorting to other methods of statutory construction. 1 Pa.C.S. § 1921; *Allegheny County Institution District v. Department of Public Welfare,* 668 A.2d 252 (Pa.Cmwlth.1995).

formed as a judicial system employee of the county. *The election shall not convert service in other retirement systems or* pension plans that is not credited in the county plan from which the member is transferred. Once the conversion occurs, the converted service shall lose all attributes and characteristics as county service and shall be State service as set forth in this part.

71 Pa.C.S. § 5303.1(a) and (d) (emphasis added).

The Board held that subsection (a) limits the transfer to a single "retirement plan," *i.e.,* the one in which the court administrator was a contributor at the moment of transfer. If there were a doubt about whether Section 5303.1(a) allowed the transfer of service in more then one county pension plan, that doubt was resolved in subsection (d), providing that the administrator may not transfer service "not credited in the county plan from which the member is transferred." 71 Pa.C.S. § 5303.1(d). The Board found no ambiguity in the legislative directive.

Chuk offers a different "plain reading" of Section 5303.1. Chuk argues that "immediately prior" to January 1, 2000, he was a "contributor" in both the York County and Delaware County retirement plans. Accordingly, it was his right under Section 5303.1(a) to convert service in each plan in which he was a "contributor" on the day he filed his election. This result, he argues, is consistent with the policy

concerns expressed in *The Interim Report of the Master* that county court employees should not be disadvantaged by the transfer to state employment.

Chuk begins with the unassailable proposition that the meaning of "contributor" must be based on legislative intent.[11] The word "contributor" is not defined either in Act 1999–12 or in the State Employees' Retirement Code; however, because the Retirement Code and the County Pension Law are statutes *in pari materia,*[12] Chuk contends that definitions appearing in one statute may be used to understand the other. Section 2(5) of the County Pension Law, defines "contributor" as "any person who has accumulated deductions in the fund standing to the credit of the *members' annuity reserve account.*" 16 P.S. § 11652(5) (emphasis added).[13] There can be no doubt that Chuk is a "member," which is defined in Section 5102 of the State Employees' Retirement Code as an "[a]ctive member, inactive member, annuitant, *vestee* or special vestee." 71 Pa.C.S. § 5102 (emphasis added). Thus, as a "vested member" of the Delaware County pension plan, where he has a substantial "member's annuity reserve account," Chuk argues that he is a "contributor" to the Delaware County pension plan, as that term is used in Section 5303.1(a).

Chuk also finds support for his reading of Section 5303.1(a) in Section 23 of Act 1999–12, which provides as follows:

---

11. Chuk acknowledges that he was no longer making cash contributions to the Delaware County pension plan on January 1, 2000. However, he argues that the word "contributor" does not require such a narrow reading.

12. Chuk argued that the State Employees' Retirement Code and County Pension Law relate to the same class of persons requiring them to be read *in pari materia.* 1 Pa.C.S. § 1932. On this legal point, the Board agreed.

13. There are two components of the County Employes' Retirement Fund: (1) moneys arising from appropriations made by the county; and (2) moneys from contributions made by the members. 16 P.S. § 11657. The County Pension Law provides that "the moneys ... contributed by the members ... shall be credited to a *member's annuity reserve account.*" *Id.* (emphasis added).

County service that is converted to State service pursuant to 71 Pa.C.S. § 5303.1 shall be canceled in *all retirement systems* in which it was previously credited and shall lose all characteristics of county service.

Section 23 of Act 1999–12 (emphasis added). This reference to *"all* retirement systems," according to Chuk, means that the legislature anticipated that a court administrator might elect to transfer service from more than one retirement plan. This anticipation would not be logical unless the legislature had intended to authorize the conversion of county service in any and all county retirement systems.

Finally, Chuk believes that his proffered construction of Section 5303.1(a) is supported by sound public policy. The statutory scheme that made court administrators county employees was found unconstitutional in *Allegheny I;*[14] as such, according to Chuk, these statutory provisions were void *ab initio.* To allow court administrators to convert all the time spent as county employees to SERS, as though they had been state employees since 1968, will correct the prior unconstitutional funding system.

We consider, first, Chuk's policy argument. The expressed intention of the legislature in enacting Act 1999–12 was to "facilitate the administration of the Unified Judicial System by providing for inclusion of key designated county-level court administrators ... within the State judicial personnel system and for their compensation by the Commonwealth." Preamble of Act 1999–12. Assuming that this expresses an intention to correct the statutory scheme that made court personnel employees of counties, it expresses a commitment to prospective, not retroactive, remediation. A statute must be given prospective effect only, unless the statute includes clear language to the contrary. 1 Pa.C.S. § 1926.[15] *See Keystone Coal Mining Corp. v. Workmen's Compensation Appeal Board (Wolfe),* 673 A.2d 418, 420 (Pa. Cmwlth.1996).

Chuk quotes at length from *The Interim Report of the Master,* noting Justice Montemuro's concern that in achieving a truly unified judicial system, care should be taken to avoid "economic or other hardship to the dedicated personnel of courts throughout the state." *The Interim Report of the Master* at 16. This report, however, is of no utility in resolving the statutory construction problem presented here.[16]

First, the Master was appointed to assist the Supreme Court, not the General Assembly. The use of extrinsic aids is very limited in a statutory construction case,[17] and there is simply no precedent for using a report of this type in this exercise.

**14.** This statutory scheme was set forth in the Judicial Code, The Second Class County Code and The County Code. *Allegheny I,* 517 Pa. at 71–72, 534 A.2d at 762–763.

**15.** It states:
  No statute shall be construed to be retroactive unless, clearly and manifestly so intended by the General Assembly
  1 Pa.C.S. § 1926.

**16.** This is not to say that this report did not contain valuable insights. It is only to say that the Report's influence upon Act 1999–12 cannot be discerned, and it certainly cannot be presumed.

**17.** The Statutory Construction Act of 1972 provides in relevant part as follows:
  The comments or report of the commission, committee, association or other entity which drafted a statute may be consulted in the construction or application of the original provisions of the statute if such comments or report were published or otherwise generally available prior to the consideration of the statute by the General Assembly, but the text of the statute shall control in the event of conflict between its text and such comments or report.
  1 Pa.C.S. § 1939.

Second, *The Interim Report of the Master* expressed a concern that individuals transferring from county to state employment not be "adversely affected." *Id.* at 23. An individual could be seriously harmed if he or she were on the verge of vesting in a county retirement system on the day of transfer to state employment. In the absence of some allowance, that individual could lose all service credit for county employment.[18] However, allowance was made in Section 5303.1.

Chuk has not been adversely affected by his transfer to state employment. Pursuant to Section 5303.1(a), Chuk's service with York County will not be lost but, rather, transferred into service credit with SERS where it will augment state service rendered after January 1, 2000. Further, Chuk's vested rights in the Delaware County pension system are unaffected; his annuity account will continue to accrue interest until he reaches age 60.[19] In short, the concern of the Master that court employees not be harmed by a transfer to state employment has been satisfied.

In any case, considerations of policy are no substitute for an examination of the words of a statute. We turn, then, to Chuk's proffered reading of the words in Section 5303.1(a). Although there is some logic to the components of Chuk's proffered construction of Section 5303.1(a), in the end, it does not withstand a close reading of Act 1999–12.

We do not agree that the General Assembly intended to use the County Pension Law definition of "contributor" in Section 5303.1(a) of the State Employees' Retirement Code instead of the commonly understood meaning of the word.[20] However, even if we accept Chuk's understanding of "contributor," his argument, in its entirety, requires too many gymnastics to carry the day. It means that the legislature chose to express itself indirectly, using a definition appearing in a companion statute, rather than expressing itself directly in Section 5303.1(a). It could have stated, for example, that court administrators "may elect to convert all their county service in all retirement systems or pension plans to which they had made contributions." It did not. Further, the complexity of Chuk's argument is not its only flaw.

First, Chuk's interpretation of Section 5303.1(a) does not give effect to the limiting phrase "immediately prior to the transfer to State employment" in Section 5303.1(a). If Chuk is correct that the operative word is "contributor," then the "immediately prior" phrase serves no purpose. It is mere surplusage. We are constrained, however, to construe a statute "to give effect to all its provisions," lest words be rendered mere surplusage. 1 Pa.C.S. § 1921(a).[21]

Second, an examination of other provisions in the State Employees' Retirement Code undermines Chuk's interpretation of Section 5303.1. The conversion rights of

---

**18.** Neither *Allegheny I* nor *The Interim Report of the Master* stated that the level of compensation, including benefits, paid to court personnel was inappropriate. The issue was transferring funding of the unified judicial system from counties to the state.

**19.** Chuk accepted employment with York County knowing that his service in Delaware County would not transfer to the York County pension plan.

**20.** The General Assembly stated expressly that the definition of "contributor" in the County Pension Law is limited to "this act." Section 2 of the County Pension Law, 16 P.S. 11652.

**21.** It states, in relevant part that "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a).

public school employees are set forth in Section 5303.2(a), which provides, in relevant part, that "an employee transferred [to state employment] ... may make a one-time election of service credited ... as of June 30, 1999, and transfer to [SERS] *all accumulated member contributions* and statutory interest." 71 Pa.C.S. § 5303.2(a) (emphasis added). By contrast, Section 5303.1(a) does not state that court administrators may transfer of "all accumulated member contributions." One can only conclude that the different phraseology used in two side-by-side statutory provisions, *i.e.*, Sections 5303.1 and 5303.2, was intentional.

We also do not agree with Chuk that Section 23 of Act 1999–12 provides compelling support for his construction of Section 5303.1. The Board concluded that the reference to "all retirement systems" in Section 23 was a typographical error. We believe, however, that Section 23 does not speak to the election rights of an individual county administrator; Section 23 simply clarifies the status of all county service that will be transferred to SERS by all administrators pursuant to their respective elections, another topic altogether. Section 23 is irrelevant to the meaning of Section 5303.1 and does not overcome the problems with Chuk's argument.

Finally, Chuk's interpretation cannot be accepted in the face of subsection (d) of Section 5303.1, which states that "[t]he

*election shall not convert service in other retirement systems* or pension plans that is *not credited in the county plan* from which the member is transferred." 71 Pa. C.S. § 5303.1(d) (emphasis added). It is undeniable that Chuk's service credit from the Delaware County pension plan was never credited to the York County retirement plan. Why it was not credited is of no moment. The legislative intent is clear. To convert county service time to SERS, all of that county service time had to have been rolled into the single retirement system in which Chuk was a contributor "immediately prior" to his transfer to state employment.

The Board correctly interpreted Section 5303.1 of the Retirement Code. Accordingly, we hold that the Board's denial of Chuk's request for conversion of his Delaware County service to SERS must be affirmed.

## CONCLUSION

Pennsylvania is a patchwork of hundreds of units of local governments, each of which has established separate pensions with different contribution amounts depending on the type of service performed. Except where a county or municipality has elected to participate in the Pennsylvania Municipal Retirement System,[22] employees have no expectation of transferring service credit from one retirement plan to another.[23] The task of converting the service of

---

**22.** *See* Pennsylvania Municipal Retirement Law, Act of February 1, 1974, P.L. 34, *as amended*, 53 P.S. §§ 881.101–881.501.

**23.** Section 204 of the Pennsylvania Municipal Retirement Law, 53 P.S. § 881.204, states, in relevant part:

When a contributor leaves the employ of a municipality which has joined the system, and enters into the employ of another municipality which has also joined the system, his service credits shall remain unimpaired, but ... the unpaid municipal liability for

prior service ... shall be prorated between the municipalities on an equitable basis. For purposes of Section 204, a "municipality" is a "city, borough, town, township, county ... or ... authority." Section 102, 53 P.S. § 881.102. There is no similar provision in the County Pension Law for plans, such as that of Delaware County, established under the County Pension Law.

court administrators that had been credited over 60 county plans was a daunting one, and it was further complicated by the fact that an administrator's county service time might include employment other than court employment.[24] The General Assembly simplified the task in two ways. First, it permitted the transfer of all county service, regardless of whether it was provided to the county court or, for example, the county tax assessment office. Second, it limited the transfer to one plan, *i.e.*, the one to which the county employee was making contributions on the day of transfer to state employment. The scheme established in 71 Pa.C.S. § 5303.1(a) fairly and rationally effects the task of moving accrued retirement benefits to SERS.[25]

Because the Board's construction of 71 Pa.C.S. § 5303.1(a) is correct, we affirm the Board.

Judge SMITH–RIBNER dissents.

### ORDER

AND NOW, this 24th day of October, 2005, the order of the Pennsylvania State Employees' Retirement Board of December 22, 2004, in the above-captioned matter is hereby affirmed.

---

**24.** Counties may establish pension plans under the County Pension Law or join the Pennsylvania Municipal Retirement System. The State Employees' Retirement Code established a complex, and detailed system, for the equitable transfer of county service to SERS. The type of pension plan and the contribution level in the county pension system becomes determinative of the "class of service" assigned in SERS. 16 P.S. § 11657(b); 71 Pa. C.S. § 5306(c). These classes correspond to multipliers for calculation of "eligibility

points" used to determine eligibility and benefits. 71 Pa.C.S. § 5102. Years of service credited to the Pennsylvania Municipal Retirement System, available to first and second class counties, are similarly converted in Section 5306(c) to state service, but the multiplier is different.

**25.** Chuk's construction would effect a retroactive portability that is neither required nor contemplated by the County Pension Law.