**Sylvia A. WATERS, Petitioner**

v.

**STATE EMPLOYEES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 7, 2008.

Decided July 31, 2008.

Reargument Denied Sept. 26, 2008.

Paul E. Waters, Harrisburg, for petitioner.

M. Catherine Nolan, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Sylvia A. Waters petitions for review of an order of the State Employees' Retirement Board (Board) denying her request

to receive a service-connected disability supplement under the State Employees' Retirement Code[1] (Retirement Code), which guarantees the member a payment of seventy percent of her final average salary where the disability is caused by a compensable work-related injury. The Board adopted the opinion and recommendation of the Hearing Examiner that this supplement is available only where the member is actually receiving workers' compensation disability benefits. The principal issue we consider is whether the Board erred because it did not give due consideration to the version of the Retirement Code that was in effect at the time Waters suffered her service-connected disability.

The history of this case is long, complex and involves both the workers' compensation and retirement statutes. On July 30, 1985, while employed by the Pennsylvania Department of Health, Waters sustained a work-related injury. Pursuant to a Notice of Compensation Payable describing her injury as low back pain with radicular symptoms, Waters began receiving total disability benefits under the Workers' Compensation Act[2] in the amount of $336 per week.

The Retirement Code provides a disability annuity to State employees who become unable to work for any reason, provided they have enough service time. Section 5308(c) of the Retirement Code, 71 Pa.C.S. § 5308(c); *Dingel v. State. Employees' Retirement System,* 62 Pa. Cmwlth. 79, 435 A.2d 664, 666 (1981). Where the disability results from a work-related injury, the Retirement Code augments the disability annuity as necessary to ensure the State employee's disability annuity equals seventy percent of her final average salary. Section 5704(f) of the Retirement Code, as it was worded at the time Waters was injured, stated as follows:

> (f) Supplement for service connected disability.—If a member has been found to be eligible for a disability annuity and if the disability has been found to be a service connected disability, *such member shall receive a supplement equal to 70 [percent] of his final average salary* less the sum of the annuity as determined under subsection (a) and any payments paid or payable on account of such disability under the [Workers' Compensation Act], the act of June 21, 1939 (P.L. 566, No. 284), known as The Pennsylvania Occupational Disease Act, and the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 *et seq*). Such supplement shall continue as long as he is determined to be disabled on account of his service connected disability in accordance with the Workers' Compensation Act, or The Pennsylvania Occupational Disease Act.

71 Pa.C.S. § 5704(f). The State Employees' Retirement System (SERS) granted Waters a temporary service-connected disability annuity. However, it did not pay Waters the Section 5704(f) supplement, even though her disability was service-related, because her disability annuity and workers' compensation disability benefit in combination exceeded seventy percent of her final average salary.[3]

---

1. 71 Pa.C.S. §§ 5101–5956.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

3. At the time Waters left state employment, she earned $33,445.56 per year. Seventy percent of her final average salary was $23,411.89 per year, or $1,950.99 per month. Waters' maximum monthly disability annuity was $978.83 and her monthly workers' com-

On June 10, 1994, SERS informed Waters that her disability was approved as total and permanent. Certified Record (C.R.) Exhibit SERS–8.[4] As such, Waters was no longer required to provide periodic medical documentation of her disability.

In 2001, Waters' counsel wrote to SERS requesting a determination of the amount of Waters' Section 5704(f) supplement that she would receive after she exhausted her workers' compensation disability benefits. On June 18, 2001, Linda Miller, Director of the Benefit Determination Division for SERS, responded that Waters would not be eligible for a Section 5704(f) supplement if her workers' compensation benefits were discontinued. Miller's letter explained that Waters' disability annuity and workers' compensation totaled more than seventy percent of her final average salary when she retired, and "the 70 [percent] test was based on the original award amount." C.R. Exhibit SERS–12.

After Waters left the Department of Health, she worked for Swatara Township and for the Pennsylvania Human Relations Commission. This employment disqualified her from continuing to receive total disability workers' compensation benefits; she was, however, eligible for partial disability workers' compensation benefits.[5] Under Section 306(b)(1) of the Workers' Compensation Act, partial disability benefits are limited to 500 weeks. 77 P.S. § 512(1). Waters' 500 weeks of partial disability expired in July 2002.

Waters then filed a reinstatement petition alleging that her condition had worsened, thereby entitling her to total disability workers' compensation benefits. On October 12, 2005, WCJ James Deeley denied her reinstatement petition. The WCJ found Waters to be principally disabled by fibromyalgia and abdominal problems, which were not work-related. With respect to her work injury, the WCJ found that Waters "could have continued at partial earning capacity" and that she "continues to have some disability related to the back injury." C.R. Exhibit SERS–3; WCJ Decision, Oct. 12, 2005, at 9, Conclusions of Law 3–4. However, he did not find an increase in disability arising from her work injury and, therefore, denied her request for reinstatement of total disability benefits.

Waters appealed, and the Workers' Compensation Appeal Board affirmed. Waters then appealed to this Court. However, she withdrew her appeal when the parties entered into a Compromise and Release (C & R) Agreement, in which she released the Department of Health from any further liability in return for a payment of $1,250. The C & R Agreement included the following language:

> [t]he parties agree that the lump sum payment of $1,250.00 covers the period

---

pensation disability benefits were $1,460.48, for a combined monthly total of $2,439.31. Because she received over one hundred percent of her final average salary, Waters did not qualify for a Section 5704(f) supplement.

It should be noted that $978.83 was not the actual amount paid to Waters because she selected the survivor option. SERS uses the maximum amount in its Section 5704(f) calculation.

**4.** Citations are to the certified record, because the reproduced record is not properly numbered.

**5.** For workers' compensation purposes, the term "disability" is synonymous with a loss of earning power. *Scott v. Workers' Compensation Appeal Board (Jeanes Hospital)*, 732 A.2d 29, 32 n. 3 (Pa.Cmwlth.1999). An injured worker is considered partially disabled if she has earning power that is less than her pre-injury wages. *Hyman S. Caplan Pavilion v. Workers' Compensation Appeal Board (Dullebawn)*, 735 A.2d 147, 152 (Pa.Cmwlth.1999).

from July 29, 2002 through the present, and includes any and all future benefits payable.

C.R. Exhibit CL–9 at 3. In a November 22, 2006, decision, WCJ David Weyl approved the C & R Agreement.

In February 2006, Waters' counsel wrote to SERS requesting a service-connected disability supplement pursuant to Section 5704(f) of the Retirement Code. He explained that with the loss of Waters' workers' compensation benefits, her annuity was no longer equal to seventy percent of her final average salary. By letter dated April 11, 2006, SERS denied the request, stating as follows:

> Since she was entitled to and receiving more than 70 [percent] of her [Final Average Salary], she was not entitled to the supplement for service-connected disability at the time of her retirement and is not at this time.

C.R. Exhibit SERS–14.

Waters appealed. On May 22, 2006, the SERS Appeals Committee denied the appeal, explaining that Waters "does not qualify to receive the supplement when her workers' compensation benefit is discontinued because the 70 [percent] test was based on the original workers' compensation award amount." C.R. Exhibit SERS–16. Waters then requested an administrative appeal to the Board.[6]

On February 1, 2007, a hearing was held before a Hearing Examiner. Waters presented William Nast, Jr., Esq., to testify as an expert in statutory construction. Nast explained that under Section 5704(f) of the Retirement Code, if an employee has a service-connected disability, she is entitled to receive at least seventy percent of her final average salary for life. Section 5704(f), as amended in 2002, now reads as follows:

> (f) Supplement for service connected disability.—If a member has been found to be eligible for a disability annuity and if the disability has been found to be a service connected disability *and if the member is receiving workers' compensation payments for other than medical benefits,* such member shall receive a supplement equal to 70 [percent] of his final average salary less the sum of the annuity as determined under subsection (a) and any payments paid or payable on account of such disability under the ... Workers' Compensation Act, the act of June 21, 1939 (P.L. 566, No. 284), known as The Pennsylvania Occupational Disease Act, and the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 *et seq.*). Such supplement shall continue as long as he is determined to be disabled *and is receiving workers' compensation payments for other than medical benefits* on account of his service connected disability in accordance with the Workers' Compensation Act or The Pennsylvania Occupational Disease Act. If the member has received a lump sum workers' compensation payment in lieu of future weekly compensation payments, the length in weeks and calculation of the service connected disability supplement shall be determined by dividing the lump sum payment by the average weekly wage as determined by the Workers' Compensation Board.

71 Pa.C.S. § 5704(f) (as amended by the Act of April 23, 2002, P.L. 272) (emphasis added). Under the 2002 version of Section

---

**6.** Waters also submitted a copy of the C & R Agreement and requested that SERS reconsider its determination. SERS reviewed the additional documentation and again determined that Waters is not entitled to a service-connected disability supplement.

5704(f), the employee must be receiving workers' compensation payments for other than medical benefits to qualify for the supplement. In Nast's opinion, this represented a substantive change in the law.[7] He further opined that under the contract theory of retirement compensation, the 2002 changes cannot be applied to Waters, who retired in 1986. Nast believed that Waters is entitled to seventy percent of her final average salary, regardless of whether she receives workers' compensation benefits, because the pre–2002 version of Section 5704(f) applies to her.

Waters testified on her own behalf. She explained that based on the language of Section 5704(f) of the Retirement Code and excerpts from the SERS Members Handbook from 1985 and 1986, she believed that as long as she was disabled and unable to return to her job with the Department of Health, she would receive seventy percent of her final average salary.[8] Waters noted that the Members Handbook states that if an employee is still disabled when she reaches normal retirement age, she will be paid disability benefits for the rest of her life. C.R. Exhibit CL–14. Waters understood that to mean that because she was still disabled upon reaching retirement age 60 in 2000, she is entitled to seventy percent of her final average salary for the rest of her life or until she goes back to work with the Department of Health.

SERS presented testimony from Joseph Torta, Director of SERS' Benefit Determination Division. Torta testified that the 2002 amendment did not change the way SERS had always treated requests for disability supplements and did not change SERS' interpretation of Section 5704(f) of the Retirement Code. Torta explained that

> [w]e were doing the same thing before as we were doing after the language was added regarding a member's eligibility for a disability supplement, as far as whether or not they were receiving . . . [workers'] compensation benefits.

Notes of Testimony, Feb. 1, 2007, at 83–84. Torta stated that SERS' "business practice" prior to 2002 was to condition the Section 5704(f) supplement on the member's actual receipt of workers' compensation disability benefits.

Following the hearing, the Hearing Examiner recommended that Waters' request for a service-connected disability supplement be denied. The Hearing Examiner determined that because Waters' workers' compensation benefits were discontinued, she did not qualify for a service-connected disability supplement under Section 5704(f) of the Retirement Code. The Hearing Examiner also concluded that Waters is not entitled to a supplement because WCJ Deeley determined that "the medical condition that severely disables [her] is not

---

7. It is well-settled that an expert is not permitted to give an opinion on a question of law. MCCORMICK ON EVIDENCE § 12 at 62 (6th ed. 2006). This means that an expert witness may not be offered to testify "as to the governing law" or "what the law required." *United States v. Leo,* 941 F.2d 181, 196–197 (3rd Cir.1991). *See also Browne v. Department of Transportation,* 843 A.2d 429, 433 (Pa.Cmwlth.2004) (explaining that an expert's legal opinion testimony, such as whether a party has violated an ordinance, is not admissible); *Kosey v. City of Washington Police Pension Board,* 73 Pa.Cmwlth. 564, 459 A.2d 432,

434 (1983) (stating that an expert witness may not testify as to issues of law, which are for a court to decide). In short, the testimony of an expert in statutory law, such as Mr. Nast, should not have been allowed. The law is evidence of itself, and it is up to the courts, not a witness, to draw conclusions as to its meaning.

8. The applicable provisions of the SERS Members Handbook are set forth in the text of this opinion, *infra.*

due to [her] work injury." Hearing Examiner Opinion, May 23, 2007, at 9, Conclusion of Law 4.

Both parties filed exceptions to the Hearing Examiner's "Opinion and Recommendation." By order of September 27, 2007, the Board adopted the Hearing Examiner's recommendation, with amendments. The Board agreed with the Hearing Examiner that "if a member of SERS has [her] benefits, regardless of medical benefits, under the Workers' Compensation Act stop, that member is not entitled to the SERS service connected disability supplement." Board Opinion, Sept. 27, 2007, at 12. Noting that it had always been SERS' business practice to require *receipt* of workers' compensation benefits in order to qualify for a Section 5704(f) supplement, the Board concluded that the 2002 amendment was merely a clarification of what had always been the meaning of Section 5704(f). Indeed, SERS' longstanding interpretation was set forth in SERS' regulation at 4 Pa.Code § 247.4, which has been in effect since March 1976.[9] The Board also agreed that WCJ Deeley found that Waters no longer has a disabling work-related injury. For all these reasons, the Board denied Waters' request for a service-connected disability supplement. The present appeal followed.[10]

On appeal, Waters raises several issues.[11] First, Waters argues that the Board violated its regulation at 4 Pa.Code § 247.4(b) and in that regard made factual findings that are not supported by substantial evidence. Second, she asserts that the Board misconstrued and violated Section 5704(f) of the Retirement Code, noting that SERS' "business practice" is irrelevant to the correct interpretation of statutory law. Third, Waters asserts that her right to receive a service-connected disability supplement is consistent with SERS' interpretation of the law as it was in 1986 and as set forth in its Members Handbook. Fourth, Waters argues that even if the law requires a member to be receiving workers' compensation benefits to be entitled to a Section 5704(f) supplement, she actually meets that requirement. Finally, Waters contends that SERS is estopped from denying Waters a supplement, based on its own prior undisputed representations. We address these issues *seriatim.*

■ In her first argument, Waters notes that the pertinent regulation provides that a "service-connected disability shall be discontinued if the State compensation authorities *determine that the service-connected disability has ceased.*" 4 Pa.Code § 247.4(b) (emphasis added). Waters argues that WCJ Deeley did not find that her work-related disability had ceased, and the Board's factual finding to the contrary is wrong. Rather, WCJ Dee-

---

**9.** The text of 4 Pa.Code § 247.4 is set forth, *infra,* in the text of this opinion.

**10.** Our review of an administrative board's final adjudication is limited to determining whether the board committed an error of law, whether constitutional rights were violated and whether necessary factual findings are supported by substantial evidence. *Chuk v. State Employees' Retirement System,* 885 A.2d 605, 608 n. 9 (Pa.Cmwlth.2005). As to questions of law, this court exercises plenary review, "although we note that, 'as an agency charged with execution and application of the retirement statute, the Board is entitled to considerable deference in its construction of the Retirement Code and the regulations promulgated thereunder; therefore, the Board's construction may not be overturned unless it is clearly erroneous.'" *Gowden v. State Employees' Retirement Board,* 875 A.2d 1239, 1241 n. 4 (Pa.Cmwlth.2005) (quoting *McCormack v. State Employees' Retirement Board,* 844 A.2d 619, 622 n. 2 (Pa.Cmwlth.2004)).

**11.** We have rearranged the order of Waters' arguments for organizational purposes.

ley simply found that Waters' work-related disability had not increased and that the principal basis for her inability to work was caused by medical conditions not related to her work injury. However, WCJ Deeley found Waters still disabled by her work injury. Before this Court, the Board continues to argue that WCJ Deeley found that Waters' disability had ceased.

We agree with Waters. WCJ Deeley denied Waters' reinstatement petition because he did not believe Waters had proved an *increase* in her work-related disability, finding that "the medical condition that severely disables [Waters] is not due to the work injury." C.R. Exhibit SERS–3; WCJ Decision, Oct. 12, 2005, at 8. The Board believes that by this language, WCJ Deeley found that Waters' service-connected disability ceased, but the Board's belief is not consistent with workers' compensation law. WCJ Deeley expressly stated that Waters "*continues to have some disability related to the back injury*" and that Waters "could have continued *at partial earning capacity.*" *Id.* at 9, Conclusions of Law 3, 4 (emphasis added). In other words, Waters' partial disability, which relates to her work-related back injury, continues.[12]

Although Waters is correct that WCJ Deeley determined that her work-related disability, in fact, continues, this is not dispositive of the case. Rather, the issue is whether the cessation of Waters' workers' compensation benefits rendered her ineligible for a Section 5704(f) supplement.

On this issue, Waters contends that the 2002 amendment established a new requirement for a Section 5704(f) supple-

ment, namely that the employee *must be receiving workers' compensation benefits.* This was not a requirement prior to 2002, and Waters argues it has no application to her because she began receiving her disability annuity in 1986. Although it may have been SERS' "business practice" to require receipt of workers' compensation benefits prior to 2002 in order to qualify for a supplement, Waters argues that SERS cannot add requirements to a statute through a "business practice."

The Board counters that eligibility for the Section 5704(f) supplement has always been determined by totaling the amount of the member's annuity and the member's workers' compensation disability benefits. When workers' compensation benefits terminate, they cannot be placed into the calculation and, thus, the right to a supplement is extinguished. The Board argues that the 2002 amendment to Section 5704(f) effected a mere clarification of, but not a change to, the law.

We begin with the definition of "service-connected disability" found in Section 5102 of the Retirement Code, which is

[a] disability resulting from an injury arising in the course of State employment, and which is compensable under the applicable provisions of the [Workers' Compensation Act], or the act of June 21, 1939 (P.L. 566, No. 284), known as "The Pennsylvania Occupational Disease Act."[13]

71 Pa.C.S. § 5102. Under this definition, a service-connected disability is not merely a disability resulting from a work-related injury. The disability must also be "compensable." In other words, a service-con-

---

12. The reason Waters does not still collect partial disability benefits is because those benefits last only 500 weeks. *See* Section 306(b)(1) of the Workers' Compensation Act,

77 P.S. § 512(1). Waters is beyond 500 weeks.

13. The Occupational Disease Act is not applicable here.

nected disability cannot exist if it is not compensable under the Workers' Compensation Act.

Both Waters and the Board rely on *Daneker v. State Employes' Retirement Board*, 156 Pa.Cmwlth. 511, 628 A.2d 491 (1993), in support of their respective positions. In *Daneker* this Court considered the question of how to determine whether an annuitant's disability is service-connected or non-service connected. We held that this determination is made exclusively by the workers' compensation authorities. Accordingly, SERS "must treat an annuitant's disability as non-service connected unless and until the [Workers'] Compensation Appeal Board (WCAB) awards benefits to the annuitant under the Act." *Id.* at 492. Examining the applicable provisions of the Retirement Code and the regulations, we concluded that "the *receipt of benefits* under the [Workers'] Compensation Act . . . is a necessary precondition to a finding of service connected disability under the [Retirement] Code and the regulations promulgated thereunder." *Id.* at 497 (emphasis added).[14]

The above-quoted analysis preceded the 2002 amendment. It appears to support the Board's argument that there can be no service-connected disability without receipt of workers' compensation benefits. However, that precise issue was not before this Court in *Daneker*, as it is here.

More compelling is SERS' regulation at 4 Pa.Code § 247.4(b), which was in effect at the time Waters retired. It expressly ties eligibility for the Section 5704(f) supplement to the receipt of workers' compensation benefits. It states, in pertinent part, as follows:

> Eligibility for a service connected disability benefit shall be determined exclusively under the provisions of the Pennsylvania [Workers'] Compensation Act . . . and the Pennsylvania Occupational Disease Act . . . and other compensation statutes applicable to special classes of Commonwealth employes. A service-connected disability, shall total 70 [percent] of the final average salary, and includes within that annuity the benefit amounts awarded by the Social Security Administration and the agency or agencies having jurisdiction over the determination of the applicable State benefits. *The benefit shall continue as long as the member is entitled to receive the State compensation benefits.* The service-connected disability shall be discontinued if the State compensation authorities determine that the service-connected disability has ceased. In that event, a member shall be eligible for normal disability benefits, as provided in section 5704(a) of the code (relating to disability annuities) if the Board determines that the member remains disabled.

\* \* \*

4 Pa.Code § 247.4(b) (emphasis added) (citations omitted). Adopted in 1976, long before Waters suffered her work injury, the regulation conditions the Section 5704(f) supplement upon the receipt of "State compensation benefits," *i.e.*, workers' compensation benefits. Properly enacted regulations have the force of law. *Snizaski v. Workers' Compensation Ap-*

---

14. Waters points to the language in *Daneker* wherein this Court stated that "the [Board] cannot, under any set of facts, find that an annuitant's disability is service connected without a prior award of [workers'] compensation benefits, at which point the [Board] must make that finding." *Daneker*, 628 A.2d at 497 n. 13. There is no dispute that Waters was entitled to workers' compensation benefits beginning in 1985, and the Board accordingly determined that she had a service-connected disability. However, it does not follow that a service-connected disability supplement is available forever.

*peal Board (Rox Coal Co.)*, 586 Pa. 146, 163, 891 A.2d 1267, 1277 (2006).

■ Further, the regulation is consistent with the pre–2002 version of Section 5704(f), which has always directed that to determine whether a member is receiving seventy percent of his final average salary, the member's annuity must be combined with the member's workers' compensation disability amount. If there is nothing to combine with the member's annuity, then there can be no supplement. We are mindful, also, that where there is an ambiguity in the meaning of a statute, the interpretation of the agency charged with its enforcement is entitled to strong deference. *Velocity Express v. Pennsylvania Human Relations Commission*, 853 A.2d 1182, 1185 (Pa.Cmwlth.2004).

In sum, SERS' longstanding interpretation of Section 5704(f) of the Retirement Code, as expressed in its regulation at 4 Pa.Code § 247.4, has always required the receipt of workers' compensation benefits to be eligible for the service-connected disability supplement. The long standing "business practice" of SERS is consistent with a reasonable interpretation of Section 5704(f) and its regulation.[15] We hold, therefore, that the 2002 amendment did not effect a substantive change to the meaning of Section 5704(f), which has always conditioned eligibility for the supple-

ment upon the actual receipt of workers' compensation.[16]

■ We next consider Waters' argument with respect to the SERS Members Handbook from 1985–86. It defined a service-connected disability as an "inability to perform your job due to illness or injury which is directly related to your job with the State" and provided that an employee with a service-connected disability "will receive up to 70 [percent] of [her] Final Average Salary." C.R. Exhibit CL–14. Waters also points to the Handbook language providing "if you are still disabled when you reach Normal Retirement Age, disability benefits will be paid for the rest of your life." *Id.* Essentially, Waters contends that because she had a service-connected disability and reached her normal retirement age of 60, she is entitled to at least seventy percent of her final average salary for the rest of her life, based on SERS' own interpretation of the law as revealed in its Members Handbook.

There are two problems with Waters' argument. First, the Handbook does not and cannot supersede the Retirement Code and regulations as written. An employer cannot be bound by the terms of its handbook unless it has expressed a specific intent to be bound by those terms. *Bernstein v. Commonwealth*, 151 Pa.Cmwlth. 401, 617 A.2d 55, 60–61 (1992). Waters

---

15. Waters argues that even if the statute prior to 2002 required receipt of workers' compensation benefits, the language was ambiguous at best, and any ambiguity must be construed in Waters' favor. To the contrary, the canons of statutory construction require that the meaning given to an ambiguous statute by the agency charged with its enforcement is entitled to deference. *Velocity Express*, 853 A.2d at 1185. Waters simply ignores the regulation.

16. Indeed, the legislature is permitted to amend a statute to incorporate an agency's pre-existing construction of the statute. *Fed-*

*eral Housing Administration v. Darlington, Inc.*, 358 U.S. 84, 90, 79 S.Ct. 141, 3 L.Ed.2d 132 (1958). Further, the Pennsylvania Supreme Court, following the United States Supreme Court holdings in this regard, has explained that when the legislature amends a statute but refuses to alter or repeal the agency's construction of the statute, the agency's construction will be followed. *Gilligan v. Pennsylvania Horse Racing Commission*, 492 Pa. 92, 99, 422 A.2d 487, 491 (1980). Here, the legislature actually amended the statute to articulate the agency's interpretation.

admits that the Handbook language did not create any type of contract.

Second, the Handbook does not promise a right to seventy percent of the final average salary in perpetuity. The relevant Handbook sections state as follows:

What Happens if your Disability was Job Related?

The Law provides special benefits for a SERVICE CONNECTED DISABILITY.

You will receive *up to* 70 [percent] of your Final Average Salary. *This amount will include benefits received under [the] Pennsylvania Worker's Compensation Act....*

What Happens if your Disability Benefit is Approved?

... If you are still disabled when you reach Normal Retirement Age, disability benefits will be paid for the rest of your life....

\* \* \*

SERVICE CONNECTED DISABILITY: An inability to perform your job due to illness or injury which is directly related to your job with the State.

C.R. Exhibit CL–14 (emphasis added).

The Handbook definition of service-connected disability does not mention workers' compensation. However, the Handbook discussion of service-connected disability specifies that seventy percent of the final average salary includes workers' compensation benefits. The Handbook does not say that if an employee stops receiving workers' compensation benefits, she will receive a supplement to bring her up to seventy percent. Indeed, it describes the disability annuity as providing *"up to"* seventy percent of the member's final average salary. The Handbook states that if a member is still disabled when she reaches normal retirement age, disability benefits will be paid for the rest of her life. However, it does not state that a supplement will be available even if workers' compensation benefits cease; it merely guarantees continued receipt of disability retirement benefits. There is no dispute that Waters continues to receive a disability annuity.[17]

■ Finally, Waters argues that assuming the receipt of workers' compensation benefits is a condition to a Section 5704(f) supplement, she meets that condition. The C & R Agreement Waters executed with the Department of Health called for a $1,250 settlement which, she argues, "extended [her] partial workers' compensation benefits, beginning on the July 29, 2002 date, forward through the present and into the future." Petitioner's Brief at 10. Waters argues that this amount was payable on account of her disability and, as such, is a workers' compensation benefit continuing to the present. Further, the C & R Agreement "superseded and made moot" anything in WCJ Deeley's decision regarding her disability or receipt of workers' compensation benefits. *See Stroehmann Bakeries, Inc. v. Workers' Compensation*

---

17. Waters cites to *Gowden v. State Employees' Retirement Board*, 875 A.2d 1239, 1243 (Pa. Cmwlth.2005), wherein this Court stated that the "obvious purpose of Section 5704(f) is to assure that those forced to retire as a result of a service connected disability should receive no less than 70 [percent] of their final average salary." However, *Gowden* is distinguishable from this case because in *Gowden* the employee was receiving workers' compensation benefits, and the issue was whether he was entitled to a service-connected disability supplement because his workers' compensation benefits were offset under Section 204(a) of the Workers' Compensation Act, 77 P.S. § 71(a), bringing him below seventy percent of his final average salary. We held that the employee was entitled to a supplement in those circumstances.

*Appeal Board (Plouse)*, 768 A.2d 1193 (Pa. Cmwlth.2001). In other words, the C & R Agreement is the current operative document in this case.

The Board takes issue with Waters' classification of the $1,250 payment as a payment of "workers' compensation benefits." According to the Board, the $1,250 Waters received was a settlement paid to end the litigation and does not represent a payment made to compensate Waters for any particular purpose, such as a payment of workers' compensation disability benefits.

The relevant section of the C & R Agreement states:

> The Defendants, Comp Services and the PA Department of Health, have agreed to pay [Waters] a lump sum of $1,250.00. In exchange, [Waters] releases the Defendants, Comp Services, Inc. and PA Department of Health, for all benefits to which [Waters] is, was or would otherwise be entitled to pursuant to the Pennsylvania Workers' Compensation Act, including but not limited to, past, present and future indemnity benefits, specific loss benefits, disfigurement benefits and medical benefits as a result of the July 30, 1985 injury, any sequelae therefrom, and any and all other injuries [Waters] may have sustained during the course and scope of her employment with the employer.

> The parties agree that the lump sum payment of $1,250.00 covers the period from July 29, 2002 through the present, and includes any and all future benefits payable.

C.R. Exhibit CL–9 at 3. Waters is correct that the C & R Agreement made moot any issues as far as the pending litigation, because as explained in *Stroehmann Bakeries*, the parties cannot continue to litigate issues settled by a C & R Agreement. Although the parties stated that the $1,250 covered the period from July 29, 2002, forward, it was not a payment of disability benefits but, rather, a payment by which Waters released her employer from any further liability for the work injury. It does not constitute a workers' compensation benefit payment but, rather, a payment in lieu of workers' compensation.[18]

Waters also contends that the amount payable under the C & R Agreement

> was understood by all parties to be subject to an increase by the supplement here claimed. This full disclosure was in the agreement itself, it was relied upon by [Waters], agreed to by employer and insurer and approved by WCJ Weyl in November 2006.

Petitioner Reply Brief at 5 (footnote omitted). It is of no moment what the parties to the C & R Agreement believed with respect to the Section 5704(f) supplement; they could not bind SERS and the Board, the agency with the responsibility to administer the retirement fund in accordance with the Retirement Code. *See Watrel v. Department of Education*, 513 Pa. 61, 518 A.2d 1158 (1986) (holding that an agreement between an employer and employee cannot extend or alter what the employee is legally entitled to receive under the Retirement Code).[19]

---

**18.** Waters actually claims that she is having the $1,250 placed into her account in increments of $100 per year, so as to extend her partial disability benefit payment for more than 10 years. There is no evidence in the record that this is the case. Even if it is the case, the money does not constitute disability benefits and, at any rate, there is no authority for Waters to extend her receipt of workers' compensation benefits by unilaterally breaking the lump sum payment into hundred dollar increments. This is a clever but ultimately unsuccessful attempt by Waters to extend her entitlement to workers' compensation benefits.

For all the above-stated reasons we affirm the order of the Board.

## ORDER

AND NOW, this 31st day of July, 2008, the order of the State Employees' Retirement Board in the above-captioned case, dated September 27, 2007, denying Waters' request for a service-connected disability supplement is hereby AFFIRMED.

19. Waters' final argument is that SERS is estopped from denying her a service-connected disability supplement to pay seventy percent of her final average salary from July 29, 2002, minus $1,250 workers' compensation benefits, based on SERS' interpretation of Section 5704(f) as set out in its Members Handbook in 1986, and on SERS' 1994 letter to Waters informing her that her service-connected disability was considered total and permanent. The Board responds that estoppel does not apply and there is no evidence that Waters relied on anything to her detriment.

To establish equitable estoppel, a party must prove: (1) intentional or negligent misrepresentation of some material fact; (2) made with knowledge or reason to know that the other party would rely upon it; and (3) inducement of the other party to act to its detriment because of justifiable reliance on the misrepresentation. *Boyd v. Rockwood Area School District*, 907 A.2d 1157, 1168 (Pa.Cmwlth.2006).

We agree with the Board that estoppel does not apply in this case because it is not apparent how Waters relied to her detriment on anything found in the Members Handbook or in the 1994 letter. According to Waters, she was forced to retire because she could not do her job, and she has not been able to return to the Department of Health at any subsequent time. She may have anticipated receiving seventy percent of her final average salary for the rest of her life when she took her disability retirement, but unless she is suggesting that she could have continued working and did not actually have to retire, there is no estoppel.